610 P.2d 449

ARIZONA PUBLIC SERVICE COMPANY, a public service corporation, Plaintiff-Appellee,

v.

TOWN OF PARADISE VALLEY, a municipal corporation, Defendant-Appellant,

Bud Tims, Ernest Garfield and Jim Weeks as members of and constituting the Arizona Corporation Commission, Defendants-Appellees.

No. 14605–PR.

Supreme Court of Arizona,
In Banc.

April 22, 1980.

Snell & Wilmer by H. William Fox, Phoenix, for plaintiff-appellee.

Roger A. McKee and Douglas A. Jorden, Paradise Valley, for defendant-appellant.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for defendants-appellees.

J. LaMar Shelley, Mesa, brief amicus curiae of League of Arizona Cities and Towns.

CAMERON, Justice.

We granted the petition for review of the appellant, Town of Paradise Valley, of a decision and opinion of the Court of Appeals affirming a summary judgment in favor of Arizona Public Service and the members of the Arizona Corporation Commission. A.R.S. § 12–120.24; Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S.

There is only one question on appeal and that is whether the legislature may constitutionally delegate to cities and towns the authority to direct the undergrounding of public utility poles.

The facts necessary for a determination of this matter on appeal are as follows. In 1964, the Town of Paradise Valley passed Ordinance No. 30 requiring new and higher capacity utility lines to be placed underground. The ordinance stated:

" * * * no person shall erect within the town boundaries and above the surface of the ground any new utility poles and wires except after securing a special permit therefor from the Town Council * * *."

Criminal penalties were provided for failure to comply with the ordinance.

Arizona Public Service replaced some of its existing utility poles without applying to the Town for a special use permit. As a result, Arizona Public Service was charged with a misdemeanor criminal complaint before the town magistrate. Arizona Public Service then instituted a special action in the Superior Court, joining the Arizona Corporation Commission and the Town. The Superior Court, in granting appellee's motion for summary judgment, declared the ordinance invalid. The Town appealed to the Court of Appeals which affirmed the decision of the trial court. We granted the Town's petition for review.

■ Because this is a review from the granting of a motion for summary judgment, we must look at the facts in a light most favorable to the party against whom the summary judgment has been taken, in this case, the Town. Rule 56, Arizona Rules of Civil Procedure, 16 A.R.S.; *Hall v. Motorists Ins. Corp.*, 109 Ariz. 334, 509 P.2d 604 (1973). For that reason, we accept the Town's allegations that although the initial cost of undergrounding may be more, the maintenance costs are less and the long term cost is the same or less than the cost of above ground utility poles.

Our Constitution reads:

"Art. 15

"§ 3   Power of commission as to classifications, rates and charges, rules, contracts, and accounts; local regulation

"Section 3.   The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations, within the State for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State, and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; *Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations*; Provided further that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said Corporation Commission may from time to time be amended or repealed by such Commission." (Emphasis added)

Early in our history, we held that the Corporation Commission's power was paramount, *State v. Tucson Gas, Electric Light and Power Company*, 15 Ariz. 294, 138 P. 781 (1914), and that the legislature could not delegate powers possessed by the Corporation Commission to a local government unless the Corporation Commission was, at the same time, divested of such powers. *Phoenix Railway Co. v. Lount*, 21 Ariz. 289, 187 P. 933 (1920). In later cases, however, we held that the Corporation Commission's paramount power is limited to rates, charges or classifications and that, as to all other matters, the legislature has the power to take what action it deems appropriate. *Williams v. Pipe Trades Industry Program of Arizona*, 100 Ariz. 14, 409 P.2d 720 (1966); *Southern Pacific Co. v. Arizona Corporation Commission*, 98 Ariz. 339, 404 P.2d 692 (1965). We stated:

"[T]he paramount power to make all rules and regulations governing public service corporations not specifically and expressly given to the commission by some provision of the Constitution, rests in the legislature, and it may, therefore, either exercise such powers directly or delegate them * * *." *Corporation Commission v. Pacific Greyhound Lines*, 54 Ariz. 159, 176–77, 94 P.2d 443, 450 (1939).

■ The question before the court, then, is not whether the legislature has the power to authorize the Town to pass an ordinance requiring undergrounding, but whether it has, in fact, done so. In the instant case, we believe that the legislature has given cities and towns the power to require the undergrounding of utility poles as part of the town's zoning powers. The statute reads as follows:

"A.   Pursuant to the provisions of this article, the legislative body of any municipality by ordinance may:

"*   *   *   *   *   *

"3.   Regulate location, height, bulk, number of stories and size of buildings and structures * * *." A.R.S. § 9–462.-01(A)(3).

This statute is a legislative grant to the cities of the authority to regulate the use, location, height and size of utility poles as part of the towns' general planning and zoning power. The height and location of utility poles is a common subject of planning and zoning statutes and ordinances, *Kahl v. Consolidated Gas, Electric Light & Power Co.*, 60 A.2d 754, 191 Md. 249 (1948). We find nothing in the Arizona statutes which exempts utility poles from the grant of authority to the towns to enact zoning laws. We believe this statute gives the Town the power to require the under-grounding of utility poles in the Town pursuant to statute.

A second statute is cited by the Town and reads as follows:

"A. In addition to the powers already vested in cities by their respective charters and by general law, cities and their governing bodies may:

\* \* \* \* \* \*

"5. Regulate the erection of poles and wires, the laying of street railway tracks, and the operating of street railways in and upon its streets, alleys, public grounds and plazas." A.R.S. § 9–276(A)(5).

The Court of Appeals and the appellees contend that the doctrine of ejusdem generis obviously applies to this statute, and that therefore the Town has the power to regulate "poles and wires" only in connection with the laying and operation of street railways. We do not agree.

■ Ejusdem generis is applicable to statutes in which there are listed specific categories followed by a general category:

"Where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose. A statute enumerating things inferior cannot, by general words,

be construed so as to extend to and embrace those which are superior. In accordance with the rule of ejusdem generis, such terms, as 'other,' 'other thing,' 'others,' or 'any other,' when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described. \* \* \* \*" 25 R.C.L. §§ 996, et seq., cited in 39 A.L.R. 1404.

In an early case of this court wherein the legislature enumerated nine particular businesses engaged primarily in the tourist industry, such as hotels, dude ranches, etc., followed by the term "or any other business or occupation charging \* \* \* rents," we said:

"The rule of ejusdem generis invoked by appellant removes any doubt that may exist as to its intention in this respect, if applicable, and it occurs to us that it is. According to it the Legislature, in following the enumeration of the nine particular businesses by the general term 'or any other business or occupation charging \* \* \* rents,' intended to limit or restrict the meaning of this general language to businesses or occupations of the same kind, class or character as those specifically mentioned, that is, to those furnishing living accommodations to tourists or transients." *White v. Moore*, 46 Ariz. 48, 57, 46 P.2d 1077, 1081 (1935). See also *State Board of Barber Examiners v. Walker*, 67 Ariz. 156, 192 P.2d 723 (1948).

■ A.R.S. § 9–276(A)(5) is not a case of a general category following the enumeration of specific categories. Section 5 gives the Town the power to regulate three different items—the erection of poles and wires, the laying of street railway tracks, and the operation of street railways on the streets, alleys, and public grounds and plazas of the towns. Each grant of authority stands equal and alone.

■ The doctrine of ejusdem generis, like other rules of statutory construction, is an aid in ascertaining the legislative intent. *United States v. Gilliland*, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941); *Orr Ditch*

*and Water Co. v. Justice Ct. of Reno,* 64 Nev. 138, 178 P.2d 558 (1947). Where the intent of the legislature is apparent, it may not be used to obscure and defeat the intent and purpose of the legislation. *United States v. Alpers,* 338 U.S. 680, 70 S.Ct. 352, 94 L.Ed. 457 (1950); *People v. McGuane,* 13 Ill.2d 520, 150 N.E.2d 168, 71 A.L.R.2d 580, cert. denied 358 U.S. 828, 79 S.Ct. 46, 3 L.Ed.2d 67 (1958). We do not believe that the doctrine applies here.

■ Appellees further rely on A.R.S. § 40–341, et seq., for the position that the legislature intended that cities and towns should not have the authority to require undergrounding at the expense of the utility. § 40–341, et seq., provide for the creation of underground conversion districts for the purpose of converting overhead electric lines to underground facilities to be paid for by the property holder in the district and not the utility. § 40–344(J) recognizes the role of the cities and towns by stating that:

"J. The corporation commission or the board of supervisors shall not establish any underground conversion service area without prior approval of such establishment by resolution of the local government."

We do not believe this statute is evidence of a legislative intent that the cities and towns do not have power over utility poles in the town. The fact that property owners may petition for the creation of an underground conversion district and be bound to pay for the undergrounding instead of the utility, does not prevent the Town from mandating the undergrounding at utility expense.

■ Finally, reference is made to A.R.S. § 40–360, et seq., concerning the creation of a siting committee for transmission lines of 115 KV or greater. The lines in the Town of Paradise Valley are mostly 12 KV, with some 69 KV. The statute does not apply to lines in the Town. Even so, the statute states as to the high energy transmission lines:

"Any certificate granted by the committee shall be conditioned on compliance by the applicant with all applicable ordinances, master plans and regulations of the state, a county or an incorporated city or town, except that the committee may grant a certificate notwithstanding any such ordinance, master plan or regulation, exclusive of franchises, if the committee finds as a fact that compliance with such ordinance, master plan or regulation is unreasonably restrictive and compliance therewith is not feasible in view of technology available." A.R.S. § 40–360.06(D).

These exceptions evidence a legislative recognition that the cities and towns have the power to act in this area.

■ We believe that, in the absence of a clear statewide preemptive policy not shown here, local governments can prescribe undergrounding within their boundaries. See *Kahl v. Consolidated Gas, Electric Light & Power Co.,* supra; *Benzinger v. Union Light, Heat & Power Co.,* 293 Ky. 747, 170 S.W.2d 38 (1943); *Central Me. Power Co. v. Waterville Urban Ren'l Auth.,* 281 A.2d 233 (Me.1971); *Sleepy Hollow Lake, Inc. v. Public Service Commission,* 352 N.Y.S.2d 274, 43 A.D.2d 439 (1974); 7 McQuillin, Municipal Corporations, § 24.588 (3d ed. 1968).

Reversed and remanded for proceedings not inconsistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.