IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR 22 2006

| | |
|---|---|
| ROBERT CALLAN and JANE DOE CALLAN, husband and wife; CITY OF TUCSON, a municipal corporation and a governmental subdivision of the state, by and through its Tucson Police Department; RICHARD MIRANDA and JANE DOE MIRANDA, husband and wife; DAVID AZUELO and JANE DOE AZUELO, husband and wife; ARNOLD LOPEZ and JANE DOE LOPEZ, husband and wife; JOHN STAMATOPOULOS and JANE DOE STAMATOPOULOS, husband and wife; ROBERT SHOUN and JANE DOE SHOUN, husband and wife; and MARK TEMPF and JANE DOE TEMPF, husband and wife, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) |
| HON. DEBORAH BERNINI, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, | ) ) ) ) |
| Respondent, | ) ) |
| and | ) ) |
| LUIS A. PIMBER and CYNTHIA D. PIMBER, husband and wife, | ) ) ) |
| Real Parties in Interest. | ) ) |

2 CA-SA 2005-0085
DEPARTMENT B

O P I N I O N

SPECIAL ACTION PROCEEDING

Pima County Cause No. C-20043726

JURISDICTION ACCEPTED; RELIEF GRANTED

Kimble, Nelson & Audilett, P.C.
  By Daryl A. Audilett and Rebecca Parker-Perry                              Tucson
                                                        Attorneys for Petitioners


Waterfall, Economidis, Caldwell, Hanshaw
  & Villamana, P.C.
  By James W. Stuehringer                                                    Tucson
                                        Attorneys for Real Parties in Interest

E S P I N O S A, Presiding Judge.

¶1        Petitioners Robert Callan, the City of Tucson, and various employees of the City and their spouses (collectively, Callan) seek special action relief from the respondent judge's denial of their motion for summary judgment in the negligence action brought against them by real parties in interest, Luis and Cynthia Pimber. In the motion, relying on A.R.S. § 23-1022(D) and an intergovernmental agreement (IGA) between the City of Tucson and other governmental entities, Callan argued the superior court lacked subject matter jurisdiction of the complaint because Luis Pimber's exclusive remedy was workers' compensation benefits, which he had received.

## Special Action Jurisdiction

¶2        We generally do not accept jurisdiction of special actions challenging a trial court's denial of a motion for summary judgment, even though a denial is not appealable. *See City of Phoenix v. Yarnell*, 184 Ariz. 310, 909 P.2d 377 (1995); *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 800 P.2d 962 (1990). There are, however, exceptions to that rule. One such exception is when "the question presented is a pure issue of law and the error

2

by the trial court is patent." *King v. Superior Court*, 138 Ariz. 147, 673 P.2d 787 (1983). Both elements of that exception are present here.

¶3 Moreover, our accepting jurisdiction and granting relief will end this case. *See Emmons v. Superior Court*, 192 Ariz. 509, 968 P.2d 582 (App. 1998); *Southwest Cooperative Wholesale v. Superior Court*, 13 Ariz. App. 453, 477 P.2d 572 (1970). Although Callan theoretically has "an equally plain, speedy, and adequate remedy by appeal," Rule 1(a), Ariz. R. P. Spec. Actions, 17B A.R.S., we see no reason to permit this case to proceed to trial only to have us hold on appeal that the respondent judge had no jurisdiction to conduct that trial.

¶4 In addition, this special action presents issues of first impression. *See Piner v. Superior Court*, 192 Ariz. 182, 962 P.2d 909 (1998). We must determine whether the language of A.R.S. § 23-1022(D) and the IGA divests the superior court of jurisdiction over Pimber's negligence action, and even if it does, whether the Pimbers may nevertheless pursue their action because the parties to the IGA failed to post the notice required by § 23-1022(E).

¶5 Accordingly, we accept jurisdiction of the special action. We also grant relief because we conclude the respondent judge abused her discretion in erroneously determining these purely legal issues. *See Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 63 P.3d 282 (2003); *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983).

### Factual Background

¶6 The following facts are undisputed. In August 2003, Luis Pimber was employed by the University of Arizona Police Department (UAPD) and was assigned as an undercover narcotics officer to the Metropolitan Area Narcotics Trafficking Interdiction

3

Squad (MANTIS).[1]  Robert Callan was a police officer employed by the Tucson Police Department (TPD) and a member of the special weapons and tactical (SWAT) unit.  Callan injured Pimber during an operation conducted on August 6 with MANTIS and SWAT officers.  Pimber has received workers' compensation benefits from UAPD's insurer as a result of his injuries.  The Pimbers sued Callan for willful misconduct and TPD and its supervisor employees for negligence.

¶7        Relying on the IGA, Callan argued in the summary judgment motion that Pimber's workers' compensation benefits were his sole remedy because both UAPD and TPD had been Pimber's employer at the time he was injured, making Callan Pimber's co-employee.   The respondent judge disagreed and granted Pimber partial summary judgment, finding as a matter of law that he and Callan had not been co-employees.  She also ruled that a jury must determine whether Callan's acts had constituted willful misconduct, erroneously stating that Callan agreed with that ruling.

**Discussion**

¶8        Under § 23-1022(A), an injured employee's right to workers' compensation benefits "is the exclusive remedy against the employer or any co-employee acting in the scope of his employment."  Therefore, an employee who accepts compensation benefits for a work-related injury "waives the right to exercise any option to institute proceedings in court

---

[1]MANTIS was created by an intergovernmental agreement (IGA) entered into by the City of Tucson, Pima County, the Town of Oro Valley, the Town of Marana, the City of South Tucson, the Tucson Airport Authority, the Arizona Board of Regents (acting with authority over UAPD), the Pima Community College District, the State of Arizona, and the Tohono O'odham Indian Nation.

4

against his employer or any co-employee acting within the scope of his employment." A.R.S. § 23-1024(A). And, unless the employee rejected the workers' compensation system before the injury occurred, *see* A.R.S. § 23-906, "the superior court lacks subject matter jurisdiction over any common law tort action that the employee files against a co-employee acting within the scope of his or her employment." *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 5, 86 P.3d 944, 947 (App. 2004). Under A.R.S. § 23-1023(A), on the other hand, "an employee entitled to compensation" who "is injured or killed by the negligence or wrong of another not in the same employ . . . may pursue his remedy against such other person."

**IGA Provision and A.R.S. § 23-1022(D)**

¶9 At the crux of this special action is the meaning of the language in the IGA provision and the parallel language of the statute from which that provision was taken, § 23-1022(D). That section provides:

> An employee of a public agency, as defined in § 11-951, who works under the jurisdiction or control of or within the jurisdictional boundaries of another public agency pursuant to a specific intergovernmental agreement or contract entered into between the public agencies as provided in § 11-952 is deemed to be an employee of both public agencies for the purposes of this section. The primary employer shall be solely liable for the payment of workers' compensation benefits for the purposes of this section.

The IGA provision does not substantially differ from § 23-1022(D). Accordingly, we consider both provisions together. Article 8 of the IGA reads in part as follows:

> A. For the purpose of workmen's compensation, an employee of a party to this agreement, who works under the jurisdiction or control of, or who works within the jurisdictional boundaries of another party pursuant to this particular intergovernmental agreement for mutual aid in law enforcement,

5

shall be deemed to be an employee of the party who is his primary employer and of the party under whose jurisdiction and control he is then working as provided in A.R.S. Section 23-1022(D) and the primary employer party of such an employee shall be sole[l]y liable for payment of worker[s'] compensation benefits for the purpose of this section. Each party herein shall comply with [the] provisions of A.R.S. Section 23-1022(E) by posting the public notice required.

We review *de novo* the interpretation of contracts and statutes. *Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, 99 P.3d 1030 (App. 2004) (contracts); *Rowland v. Kellogg Brown & Root, Inc.*, 210 Ariz. 530, 115 P.3d 124 (App. 2005) (statutes).

¶10        Two other statutes are pertinent here. Section 11-952(A), A.R.S., provides in relevant part:

> If authorized by their legislative or other governing bodies, two or more public agencies by direct contract or agreement may contract for services or jointly exercise any powers common to the contracting parties and may enter into agreements with one another for joint or cooperative action . . . .[2]

---

[2]In supplemental authority, Pimber cites A.R.S. § 11-952(C) and *Myers v. City of Tempe*, No. CV-05-0154-PR, 2006 WL 389969 (Ariz. Feb. 21, 2006). Section 11-952(C) provides: "No agreement made pursuant to this article shall relieve any public agency of any obligation or responsibility imposed upon it by law." In *Myers*, our supreme court stated that statute "prevents intergovernmental agreements from eliminating a municipality's liability" and that the IGA involved in that case could not "immunize Tempe from liability where it otherwise exist[ed]." 2006 WL 389969, at ¶ 15. Unlike in this case, however, *Myers* did not address any issue of workers' compensation or subject matter jurisdiction. And, as we conclude later in this opinion, the superior court lacks subject matter jurisdiction of Pimber's underlying action because of A.R.S. § 23-1022(D) and related statutes, not because of an attempted contractual avoidance of an "obligation or responsibility imposed upon [Callan] by law." § 11-952(C).

A public agency includes "the federal government or any federal department or agency, Indian tribe, this state, any other state, all departments, agencies, boards and commissions of this state or any other state, counties, school districts, cities, towns, all municipal corporations, and any other political subdivisions of this state or any other state." A.R.S. § 11-951. No one disputes that all parties to the IGA constitute public agencies under that definition. And Pimber does not dispute that the public agencies entered into the IGA or that, at the time he was injured, the IGA was in effect, UAPD was his primary employer, and he was assigned to MANTIS.

¶11        The respondent judge did not address the question of the meaning of § 23-1022(D), finding only that the IGA provision was ambiguous. Because the IGA provision refers to the statute, however, we begin our analysis with the statutory language. In determining the meaning of a statute, we look first to its language, keeping in mind that we must "'find and give effect to legislative intent.'" *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 17, 965 P.2d 47, 53 (App. 1998), *quoting Mailboxes Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). If we find the language unambiguous, we apply it as written, without resorting to principles of statutory interpretation. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). "Ambiguity exists if there is uncertainty about the meaning or interpretation of a statute's terms." *Id.*

¶12        We find the language in both the statute and the IGA unambiguous. It applies to employees of public agencies that have entered into a specific intergovernmental agreement pursuant to § 11-952. An employee who works under the jurisdiction or control

7

of, or within the jurisdictional boundaries of, another public agency that is a party to such an agreement is expressly deemed to be an employee of both agencies—the employer and the public agency under or within whose jurisdiction the employee works. The implication of that language is that an employee of a party to an IGA who is injured in the course of employment may not seek damages in a common law tort action from another party to the IGA under or within whose jurisdiction the employee was working when injured. Unlike the statute the supreme court addressed in *Hayes*, this statutory language cannot readily be construed in more than one way, and Pimber has not suggested another way of interpreting it, having failed to address the issue.

¶13    Moreover, even if we could say the statutory language was ambiguous, we would still conclude our interpretation is correct. When a statute is ambiguous or when a proposed construction "would result in an absurd situation," *Bussanich v. Douglas*, 152 Ariz. 447, 450, 733 P.2d 644, 647 (App. 1986), we may then "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes*, 178 Ariz. at 268, 872 P.2d at 672.

¶14    Subsections (D) and (E) were added to § 23-1022 in 1983 in response to this court's decision in *Garcia v. City of South Tucson*, 131 Ariz. 315, 640 P.2d 1117 (App. 1981). *See* 1983 Ariz. Sess. Laws, ch. 140, § 1; H.B. 2118, 1st Sess., Commerce Comm. Minutes 2-3 (Jan. 24, 1983); Judiciary Comm. Minutes 5 (Jan. 31, 1983). In *Garcia*, we upheld a large verdict entered in favor of a Tucson police officer who had been paralyzed after he was shot by a South Tucson police officer during a joint police operation. This court rejected South Tucson's argument that it was immune from suit because the cities had been

8

engaged in a joint venture, finding that one of the elements of a joint venture was missing. *Id*. The judgment left the City of South Tucson in dire financial straits. *See Garcia v. City of South Tucson*, 135 Ariz. 604, 663 P.2d 596 (App. 1983).

¶15        In adopting § 23-1022(D), the legislature apparently recognized that the financial health of a city that participates in joint police operations can be severely affected by lawsuits arising from injuries officers sustain in such operations. And, from its adoption of the subsection so soon after the *Garcia* case was decided, we may infer the legislature's intent to limit such suits. Thus, the legislative history comports with our reading of the plain language of the statute.

¶16        In finding the IGA provision ambiguous, the respondent judge stated that Callan had argued it meant "any officer participating in MANTIS has two employers: his primary employer and the Tucson Police Department," and she concluded that interpretation would potentially unfairly benefit TPD alone. But Callan's argument was in fact more limited. Callan had argued that, under the IGA provision and the facts of this case, Pimber had been an employee of both UAPD and TPD under whose jurisdiction the specific MANTIS operation had been conducted.

¶17        This argument is supported by the language of article 8 of the IGA when that language is read in conjunction with the language of § 23-1022(D). In essence, they both state that employees of a party to the IGA are also considered to be employees of another party in either of two scenarios—(1) when they are working under the jurisdiction or control of the other party pursuant to the IGA, or (2) when they are working within the jurisdictional boundary of the other party pursuant to the IGA. Considering that ten public agencies were

9

parties to the IGA, in any one of whose jurisdictional boundaries a MANTIS employee might be working when injured, it defies reason to conclude that the IGA provision means any MANTIS employee had two employers for workers' compensation purposes—his or her own employer and TPD.

¶18 Pimber does not dispute that he was working within the jurisdictional boundaries of TPD when he was injured. But he focuses on the IGA provision's use of the word "and" in its second clause on jurisdiction and control, *see* ¶ 9, *supra*, and insists there is a factual dispute on whether he was working under TPD's control at the time. The provision initially refers to an employee "who works under the jurisdiction *or* control of" another party but later states the employee is deemed to have two employers, the primary employer and "the party under whose jurisdiction *and* control" the employee is then working. We agree with Callan that the "and" is likely a typographical error in light of the initial language and the corresponding "or" language in § 23-1022(D).

¶19 But it does not matter in any event because Pimber's own statement of facts filed in opposition to Callan's summary judgment motion refutes his argument. He listed as a fact that he and other MANTIS officers had been briefed by their supervisor on the evening he was injured; the supervisor was a sergeant with TPD. Thus, the facts show the operation was under the control of TPD.

**Pimber's Arguments**

¶20 Rather than focus on the statutory and contractual language, Pimber raises several arguments on why TPD should not be found to have been his employer at the time of his injury. His arguments, however, are either irrelevant or meritless. For instance,

10

Pimber points out that he was not a party to the IGA. That is a meaningless contention, considering that intergovernmental agreements by their very nature are agreements only among public agencies, not persons. *See* § 11-952.

¶21 Pimber also repeatedly points out that UAPD's insurer has paid him benefits and asserted a lien against the proceeds of his lawsuit and that neither the insurer nor the Industrial Commission has ever mentioned that the superior court might lack jurisdiction over his lawsuit. But neither an insurer nor the Commission has authority or jurisdiction to determine the superior court's jurisdiction over a particular third-party claim; that responsibility belongs to courts. *See Bonner v. Minico, Inc.*, 159 Ariz. 246, 766 P.2d 598 (1988); *Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647 (1967); *State ex rel. Indus. Comm'n v. Pressley*, 74 Ariz. 412, 250 P.2d 992 (1952) .

¶22 An insurer determines whether it will pay benefits on a compensation claim an employee has filed, and the Commission oversees any payment made and resolves contested issues relating to the claim. *See* A.R.S. § 23-1061 (listing duties of insurers and Commission in processing claims). And an insurer asserts a lien on any compensation it has paid simply to protect its assets in the event the injured employee is permitted to seek and eventually recover damages from a negligent third party. *See* § 23-1023 (authorizing lien on compensation benefits in event injured worker recovers damages from negligent third party). An insurer's mere assertion of a lien, however, is not a determination of the employee's ability to seek or recover damages, nor could it be.

¶23 Pimber additionally relies on the decision by Division One of this court in *Inmon v. Crane Rental Services, Inc.*, 205 Ariz. 130, 67 P.3d 726 (App. 2003). In that case,

11

the court held that a construction worker could pursue his lawsuit against the subcontractor whose crane had been the source of his injury because, contrary to the subcontractor's assertions, the lent employee doctrine's requirements had not been met. Pimber argues he may similarly pursue his lawsuit because the doctrine's requirements were not met here. We find his reliance on that case misplaced.

¶24 The lent employee doctrine is a judicially created doctrine that extends workers' compensation coverage to an employee temporarily working for another employer when injured. *Id.*; *see also Carnes v. Indus. Comm'n*, 73 Ariz. 264, 240 P.2d 536 (1952); *Labor Force v. Indus. Comm'n*, 184 Ariz. 547, 911 P.2d 553 (App. 1995). It does not apply when there is a "'controlling statutory, or any express or implied contractual, provision to the contrary.'" *Carnes*, 73 Ariz. at 267, 240 P.2d at 538, *quoting* 58 Am. Jur. *Workmen's Compensation* § 343, at 812. Both a contrary controlling statute and a contrary controlling contract are present in this case. Therefore, we find no merit to Pimber's assertion that he may pursue his lawsuit because he did not consent to be TPD's employee.

¶25 We also reject Pimber's contention that *Inmon* is helpful because the case addressed "the interplay between the exclusivity provision, § 23-1022(A), and the right to bring a third-party action, § 23-1023(A)." The issue before us is not the interplay between subsection (A) of § 23-1022 and § 23-1023 but, rather, the interplay between subsection (D) of § 23-1022 and § 23-1023, an issue *Inmon* did not address.

**Effect of Failure to Post Statutory Notice**

¶26 The respondent judge ruled that, even if Pimber and Robert Callan were co-employees, Pimber had "never intentionally relinquished a known right" and "neither

12

knowingly waived his common law rights" nor "waive[d] any claims against TPD." In accordance with that ruling, Pimber primarily contends the superior court has jurisdiction over his suit against Callan because neither UAPD nor TPD posted the notice required by § 23-1022(E) and the IGA. He argues that their failure to post the notice makes his case comparable to the exception in § 23-1022(A) that permits an injured worker to sue an employer when the employer has not posted the notice required by A.R.S. § 23-906. That notice tells employees they may reject the workers' compensation system before they sustain an injury. For an IGA, a special notice is required by statute. Section 23-1022(E) provides:

> Every public agency as defined in § 11-951 for which an intergovernmental agreement or contract is in effect shall post a notice pursuant to the provisions of § 23-906, in substantially the following form:

> "All employees are hereby further notified that they may be required to work under the jurisdiction or control of or within the jurisdictional boundaries of another public agency pursuant to an intergovernmental agreement or contract, and under such circumstances they are deemed by the laws of Arizona to be employees of both public agencies for the purposes of workers' compensation."

¶27 We have found no case that addresses the effect of the failure of employers who are also parties to an IGA to post this statutory notice. But we find instructive the case law addressing the effect of an employer's failure to post the ordinary notice required by § 23-906(D). In *Ream v. Wendt*, 2 Ariz. App. 497, 410 P.2d 119 (1966), this court upheld a summary judgment entered in favor of an employer who had failed to post the statutorily required notice, finding that the employee's acceptance of workers' compensation benefits after she was injured had constituted a waiver of her right to sue the employer. In doing so,

13

we rejected the worker's argument that she could not have waived her right to sue because she had not known that choice was available. We also rejected her argument that, unless a knowing waiver of the right to sue a nonposting employer is required, § 23-906 violates the anti-abrogation clause of the Arizona Constitution, article 18, § 6.

¶28 Division One reached a similar conclusion in *Southwest Cooperative Wholesale v. Superior Court*, 13 Ariz. App. 453, 477 P.2d 572 (1970). It agreed with our holding in *Ream*, which it paraphrased as: "[T]he statutorily defined *act* of applying for an award of compensation or accepting benefits operated as a binding waiver of the right to sue an allegedly non-complying employer, regardless of any lack of knowledge." *Id.* at 457, 477 P.2d at 576. In fact, Division One noted, the constitutional provision requiring creation of the workers' compensation system, article 18, § 8, "does not make the loss of the right to sue the employer dependent upon the application of common law principles of waiver" that require knowledge of the existence of an alternate remedy and an informed choice of remedy. *Southwest Cooperative*, 13 Ariz. App. at 458, 477 P.2d at 577.

¶29 Our supreme court agreed with both cases in *Anderson v. Industrial Commission*, 147 Ariz. 456, 711 P.2d 595 (1985). It rejected the employee's argument that the rule adopted in *Ream* and *Southwest Cooperative* violated both the constitutional provision mandating the workers' compensation system, article 18, § 8, and the anti-abrogation provision, article 18, § 6. The court acknowledged that the rule is different when determining whether an injured worker has waived the right to sue a negligent third party under § 23-1023 by accepting compensation benefits from the employer's insurer and failing to timely pursue a third-party lawsuit. But it concluded that "the legislature may designate

14

conduct as creating a waiver of rights against the employer as a matter of law, regardless of the claimant's intent or even if a contrary intent is expressed." *Anderson*, 147 Ariz. at 461, 711 P.2d at 600.

¶30 We find that logic applicable to this case, in which neither UAPD nor TPD posted the notice required by § 23-1022(E). The respondent judge's conclusion that Pimber "did not waive any common law right as a result of accepting benefits from his employer's workers' compensation carrier" simply cannot be reconciled with *Anderson*, *Southwest Cooperative*, and *Ream*. Despite Pimber's assertions that he was unaware of the IGA, that he never consented to be TPD's employee, and that he did not knowingly accept workers' compensation benefits in lieu of suing TPD, the legislature has declared that public agencies may enter into intergovernmental agreements and that, when they do so, an injured worker's primary employer "shall be solely liable" for any workers' compensation benefits. § 23-1022(D). Any complaint Pimber has that it is unfair for TPD to be declared his employer, rendering it immune from suit without its also being responsible for his compensation benefits, must be addressed to the legislature.

¶31 Pimber's argument that the superior court has jurisdiction over his lawsuit because he filed it against a negligent third party, a situation that requires a knowing waiver by a worker, puts the cart before the horse. Simply declaring that his suit against Callan is a permissible third-party suit because he did not knowingly waive that remedy by accepting compensation from UAPD's insurer does not mean the plain language of § 23-1022(D) and the IGA provision does not apply. In sum, because TPD was an employer of Pimber at the time he was injured, his sole remedy is the workers' compensation benefits he has already

15

received, and the superior court lacks jurisdiction of his action against TPD and its supervisory employees alleged to have negligently trained and supervised Callan.

**Was Robert Callan Pimber's Co-employee?**

¶32     We next address whether the superior court has jurisdiction over Pimber's action against Robert Callan individually. That determination hinges on whether Pimber and Callan were co-employees at the time Pimber was injured. The respondent judge concluded they were not after examining "the totality of the circumstances," including the undisputed facts that UAPD was Pimber's primary employer and that Pimber had "had no contract with" and owed "no legal duty to TPD." She conducted that analysis pursuant to *Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 794 P.2d 138 (1990). But our supreme court applied that analysis in determining whether the driver of a car who had collided with the plaintiff's motorcycle was an employee of the newspaper, making the newspaper vicariously liable for the plaintiff's injuries, or an independent contractor, relieving the newspaper of liability. That analysis is not applicable to this case in light of the language of § 23-1022(D) and the IGA.

¶33     Section 23-901(3), A.R.S., defines a co-employee as "every person employed by an injured employee's employer." Having concluded the statutory and IGA language unambiguously provides that, under the undisputed facts of this case, both UAPD and TPD were Pimber's employers when he was injured, we necessarily must also conclude that Robert Callan was Pimber's co-employee at that time. Although Callan was not assigned to MANTIS as Pimber was, he was a member of the SWAT unit that participated in the undercover operation in which Pimber was injured. Based on the language of the applicable

16

statutes, therefore, Callan was Pimber's co-employee, and Pimber's exclusive remedy is the workers' compensation benefits he has received. *See* §§ 23-901(3), 23-1022(A), and 23-1024(A). As a result, we need not address Pimber's contention that our conclusion means any employee of TPD was his co-employee because that factual scenario is not present in this case.

**Willful Misconduct**

¶34 The respondent judge ruled that "a jury issue exists as to [Pimber's] allegations of willful [mis]conduct" and that both sides had "properly" conceded that was true. Relying on that ruling, Pimber maintains he may pursue his suit against Robert Callan individually in any event because it states a cause of action for willful misconduct. *See Gamez v. Brush-Wellman, Inc.*, 201 Ariz. 266, 34 P.3d 375 (App. 2001) (discussing elements of willful misconduct cause of action). He relies on the exception in § 23-1022(A) permitting an injured worker to sue a co-employee for willful misconduct. As Callan correctly points out, however, in cases of willful misconduct allegedly committed by a co-employee, § 23-1022(A) permits the injured worker to choose between suing the co-employee and seeking workers' compensation benefits. Because we have concluded that, by accepting compensation benefits, Pimber waived his right to sue TPD despite its failure to post the statutory notice, we necessarily also conclude that his acceptance of workers' compensation benefits constituted a waiver of his right to sue Callan for willful misconduct. *See Allen v. Southwest Salt Co.*, 149 Ariz. 368, 718 P.2d 1021 (App. 1986).

17

## Conclusion

¶35      For the reasons discussed above, we conclude the respondent judge erred as a matter of law in denying Callan and his fellow petitioners' motion for summary judgment. Accordingly, we vacate the judge's ruling and direct her to enter summary judgment in favor of petitioners.

_____
PHILIP G. ESPINOSA, Acting Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
WILLIAM E. DRUKE, Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 6, 2005.