IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

JAN -9 2007

COURT OF APPEALS
DIVISION TWO

WALTER STEIN,                          )     2 CA-CV 2006-0065
                                       )     DEPARTMENT A
                    Plaintiff/Appellant,  )
                                       )     O P I N I O N
              v.                       )
                                       )
SONUS USA, INC., a foreign             )
corporation,                           )
                                       )
                    Defendant/Appellee.   )
                                       )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20050327

Honorable John E. Davis, Judge

AFFIRMED

Weisberg & Meyers, LLC
  By Marshall Meyers                                        Phoenix
                                          Attorneys for Plaintiff/Appellant

Munger Chadwick, P.L.C.
  By Evelyn Patrick Rick and Laura P. Chiasson               Tucson
                                          Attorneys for Defendant/Appellee

H O W A R D, Presiding Judge.

**¶1**        Appellant Walter Stein challenges the trial court's grant of summary judgment

in favor of appellee Sonus USA, Inc.  Stein argues the trial court erred by concluding that

a hearing aid is not an "assistive device" for purposes of Arizona's assistive device warranty statutes, A.R.S. §§ 44-1351 through 44-1355. Because we conclude that the legislature did not intend to include hearing aids in the definition of "assistive device" in § 44-1351, we affirm.

¶2     When reviewing a trial court's ruling on a motion for summary judgment, we view the facts and reasonable inferences from them in the light most favorable to the nonmoving party. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998). In January 2005, Stein filed a complaint against Sonus based on alleged defects in two hearing aids he had purchased from Sonus in October 2002. He sought relief under Arizona's assistive device warranty statutes and the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 through 2312. The trial court granted Sonus's subsequent motion for summary judgment, ruling that a hearing aid is neither an "assistive device" as defined in § 44-1351(1) nor a "consumer product" as defined in 15 U.S.C. § 2301(1). On appeal, Stein challenges only the trial court's ruling on § 44-1351(1).

¶3     The applicability of a statute is an issue of law that we review de novo. *AAA Cab Serv., Inc. v. Indus. Comm'n*, 213 Ariz. 342, ¶ 2, 141 P.3d 822, 823 (App. 2006). "When construing a statute, our goal 'is to fulfill the intent of the legislature that wrote it.'" *City of Sierra Vista v. Dir., Ariz. Dep't of Envtl. Quality*, 195 Ariz. 377, ¶ 10, 988 P.2d 162, 165 (App. 1999), *quoting State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). "If the statute is clear and unambiguous, we apply the plain meaning of the statute." *Hourani v. Benson Hosp.*, 211 Ariz. 427, ¶ 7, 122 P.3d 6, 10 (App. 2005). But, if a statute is ambiguous, we look to the "rules of statutory construction," *Lewis v. Arizona Department*

2

*of Economic Security*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App. 1996), and "'consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose,'" *Callan v. Bernini*, 213 Ariz. 257, ¶ 13, 141 P.3d 737, 740 (App. 2006), *quoting Hayes v. Continental Insurance Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). A statute is ambiguous "if there is uncertainty about the meaning or interpretation of . . . [its] terms," or if "the statute's text allows for more than one rational interpretation." *Hayes*, 178 Ariz. at 268, 872 P.2d at 672.

**¶4**　　　　The Arizona assistive device warranty statutes[1] require manufacturers to expressly warrant certain devices, defined in § 44-1351(1), designed to assist individuals with disabilities. § 44-1352(A). If a manufacturer does not provide an express warranty, the statute creates a one-year express warranty. § 44-1352(B). During the warranty period, the consumer is entitled to have a nonconforming assistive device repaired or, failing that, a replacement or a refund. § 44-1352(C), (D), (E). The statutes also provide a cause of action based on a violation of the statutes, in which a prevailing consumer may recover triple damages, as well as costs and attorney fees. § 44-1355(C).

**¶5**　　　　Section 44-1351(1) defines "assistive device" as follows:

> 1. "Assistive device" means any device, including a demonstrator, that a consumer purchases or accepts transfer of in this state and that is used to assist an individual with a disability as described in the Americans with disabilities act of 1990 (P.L. 101-336; 104 Stat. 328; 42 United States Code §§ 12101 through 12213) in connection with a major life

---

[1]Most of these sections are not relevant to the resolution of this case and are discussed here solely to provide background for the construction of A.R.S. § 44-1351(1). We do not attempt to interpret the other sections.

activity including mobility, vision, speech, communication, maneuvering and manipulation of a consumer's environment. Assistive device includes:

(a) A manual or motorized wheelchair, a motorized scooter and any device that enhances the mobility or functional capability of a consumer.

(b) A voice synthesized computer module, an optical scanner, talking software, a braille printer and any device that enables a sight-impaired consumer's ability to communicate.

(c) An environmental control unit, a motor vehicle modification or any other similar device that enables an individual with a disability to communicate, see, hear, speak, maneuver or manipulate the consumer's environment.

This definition does not expressly include or exclude hearing aids.

¶6        Both parties argue the plain language of § 44-1351(1) supports their respective interpretations. And the plain language of the statute has elements that support each party's interpretation. Portions of § 44-1351(1) suggest the term "assistive device" could include a hearing aid, as Stein argues. The statute describes an "assistive device" as "*any* device . . . that is used to assist an individual with a disability as described in the Americans with [D]isabilities [A]ct [(ADA)] . . . in connection with a major life activity including mobility, vision, speech, communication, maneuvering and manipulation of a consumer's environment." § 44-1351(1) (emphasis added). The use of the word "any" suggests a broad interpretation for the term "device." *See State v. Barr*, 183 Ariz. 434, 438, 904 P.2d 1258, 1262 (App. 1995) (the term "'any'" is "'broadly inclusive'"), *quoting City of Phoenix v. Tanner*, 63 Ariz. 278, 280, 161 P.2d 923, 924 (1945). Although hearing is not among the expressed major life activities, communication is, and a hearing aid can be considered to

4

assist with communication. Additionally, the legislature cited the ADA definition of disability, which is "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A). And the term "major life activity" has been interpreted to include hearing. *See* 29 C.F.R. § 1630.2(g)(1), (i) (1997); *Wareing v. Falk*, 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App. 1995) (enacting legislature is "presumed to know existing law").

**¶7**　　　　On the other hand, as Sonus argues, the language of the statute could demonstrate that the legislature did not intend to include a hearing aid as an assistive device. Hearing is not listed among the major life activities covered by the statute. § 44-1351(1). And, although the legislature included the ADA's definition of disability in the statute, it did not specifically incorporate any separate federal regulatory definition of major life activity. In keeping with this interpretation, the three subsections listing assistive devices covered by the statute do not include hearing aids. The legislature's failure to include hearing aids suggests the intent to exclude them. *See Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 249, 866 P.2d 1330, 1335 (1994) (expression of several items in a class suggests intent to exclude unexpressed items of the same class). Furthermore, as Sonus contends, subsection (c), which mentions the ability to hear, specifies that any assistive device must be "similar" to an "environmental control unit" or "motor vehicle modification." A hearing aid does not control the external environment, nor is it like a motor vehicle modification. It is therefore not similar to either of the enumerated devices and, accordingly, not covered by subsection (c).

¶8　　　　　The statute's text allows for more than one rational interpretation, and there is uncertainty about its meaning. *See Hayes*, 178 Ariz. at 268, 872 P.2d at 672. The statute is therefore ambiguous. *See id*. Accordingly, we apply the rules of statutory construction, *see Lewis*, 186 Ariz. at 614, 925 P.2d at 755, and examine the statute's history, context, effects and consequences, and spirit and purpose, *see Callan*, 213 Ariz. 257, ¶ 13, 141 P.3d at 740.

¶9　　　　　Sonus, contending hearing aids are not covered, relies heavily on the legislative history of § 44-1351(1), arguing that the changes made to the proposed legislation show that the legislature considered and rejected including hearing aids in the definition of "assistive device." As introduced, the bill defined "assistive device" as follows:

> 1. "Assistive device" means any device, including a demonstrator, that a consumer purchases or accepts transfer of in this state and that is used to assist an individual with a disability as described in 42 United States Code sections 12101 through 12213 in connection with a major life activity including mobility, vision, *hearing*, speech, communication, maneuvering and manipulation of a consumer's environment. Assistive device includes:
>
> (a) A manual or motorized wheelchair, a motorized scooter and any device that enhances the mobility or functional capability of a consumer.
>
> (b) *A hearing aid*, a telephone communication device for the hearing impaired, an assistive listening device and any device that enhances a consumer's ability to hear.
>
> (c) A voice synthesized computer module, an optical scanner, talking software, a braille printer and any device that enables a sight-impaired consumer's ability to communicate.
>
> (d) An environmental control unit, a motor vehicle modification or any other similar device that enables an

individual with a disability to communicate, see, hear, speak, maneuver or manipulate the consumer's environment.

HB 2676 (as introduced), 43d Leg., 2d Reg. Sess. (Ariz. 1998) (emphasis added).

¶10 The House Committee on Human Services amended then-subsection (b) of HB 2676 to strike the reference to a hearing aid and added the words "other than a hearing aid" after "hear" in that subsection. *House Comm. on Human Servs. Amendments to HB 2676*, 43d Leg., 2d Reg. Sess. (Ariz. Feb. 19, 1998). After debate on whether the statute should include hearing aids, the committee removed then-subsection (b) in its entirety before sending the bill to the full House. *See Minutes of House Comm. on Human Servs.*, 43d Leg., 2d Reg. Sess., at 6 (Ariz. Feb. 19, 1998) (hereafter House Minutes). Before the bill was sent to the Senate, "hearing" was also deleted from the list of major life activities. *Compare* HB 2676 (as introduced), 43d Leg., 2d Reg. Sess., at 4, line 11 (Ariz. 1998), *with* HB 2676 (House Engrossed), 43d Leg., 2d Reg. Sess., at 20, line 12 (Ariz. 1998).

¶11 The decision to delete language from a bill is "'strong evidence that [the] Legislature did not intend [the] omitted matter should be effective.'" *Lancaster v. Ariz. Bd. of Regents*, 143 Ariz. 451, 458, 694 P.2d 281, 288 (App. 1984), *quoting State Bd. of Barber Exam'rs v. Walker*, 67 Ariz. 156, 164, 192 P.2d 723, 728 (1948) (brackets in *Lancaster*). Accordingly, the legislative history demonstrates that the legislature purposely removed hearing aids from the assistive device warranty statutes' coverage.

¶12 The bill summaries and comments made during the meeting of the House Committee on Human Services further support this conclusion. The comments at the meeting indicate the members of the committee thoroughly debated the issue before deciding

to delete then-subsection (b). And the House bill summary prepared the day after the committee meeting stated that the committee had amended the bill to "delete[] references to hearing aid devices." *House Bill Summary for HB 2676*, 43d Leg., 2d Reg. Sess. (Ariz. Feb. 20, 1998). The final House summary of the version of HB 2676 that passed the House specifically stated that the term "assistive device[]" did "not includ[e] hearing aid devices." *House Bill Summary for HB 2676*, 43d Leg., 2d Reg. Sess. (Ariz. May 5, 1998).

**¶13**        Stein counters that the amendment removing the original subsection (b),[2] which had included the language "other than a hearing aid," coupled with comments made during the same committee meeting, suggest that the legislature ultimately decided to include hearing aids in the definition of "assistive device."[3] In doing so, he takes comments of individual legislators out of context and attempts to rely on statements by nonlegislators. Even if Stein had accurately conveyed the intent of some individual legislators, their

___

[2]Stein contends that the language "other than a hearing aid" was deleted from what is now subsection (c) of the statute. This is incorrect. The language was added to subsection (b) of the introduced bill, and that subsection was later deleted in its entirety. *See House Comm. on Human Servs. Amendments to HB 2676*, 43d Leg., 2d Reg. Sess. (Ariz. Feb. 19, 1998); *Minutes of House Comm. on Human Servs.*, 43d Leg., 2d Reg. Sess., at 6 (Ariz. Feb. 19, 1998). The legislature made no change to the language that is now in subsection (c). *Compare* HB 2676 (as introduced), 43d Leg., 2d Reg. Sess., at 4, lines 21-24 (Ariz. 1998), *with* A.R.S. § 44-1351(1)(c).

[3]Sonus, citing Rule 13(a)(5), Ariz. R. Civ. App. P., 17B A.R.S., contends that Stein's failure to cite or discuss the legislative history of A.R.S. § 44-1351(1) in his opening brief means he has waived this argument and essentially conceded that the legislature intended to exclude hearing aids from the definition of "assistive device." Because the trial court specifically relied on the legislative history in reaching its conclusion, this court could accept Stein's failure as a concession. *See In re Marriage of Pownall*, 197 Ariz. 577, n.5, 5 P.3d 911, 917 n.5 (App. 2000) (arguments raised for first time in reply brief are generally deemed waived). But, in our discretion, we consider his statutory construction arguments based on legislative history.

comments are not necessarily determinative of legislative intent. *See Hernandez-Gomez v. Leonardo*, 185 Ariz. 509, 513, 917 P.2d 238, 242 (1996) ("the expressed intent of several congressmen is not necessarily determinative" of legislative intent); *see also Coal. for Clean Air v. S. Cal. Edison Co.*, 971 F.2d 219, 227 (9th Cir. 1992) (statements of individual legislator "entitled to little, if any, weight"). And we do not consider testimony of nonlegislators as evidence of legislative intent "unless the circumstances provide sufficient guarantees that the statements reflect legislators' views." *Hayes*, 178 Ariz. at 270, 872 P.2d at 674. Here, there is no such guarantee.

¶14 Additionally, the scant legislative history of § 44-1351(1) before the Senate does not change this analysis. The Senate Fact Sheet for HB 2676 states that the statute would cover "manual or motorized wheelchair[s], voice synthesized computer modules, optical scanners, talking software, braille printers, and other devices which enable someone with a disability to communicate, see, hear, speak, maneuver or manipulate their environment." *Senate Fact Sheet for HB 2676*, 43d Leg., 2d Reg. Sess. (Ariz. Apr. 21, 1998). Although the use of the term "hear" could suggest that hearing aids fall under the statutes, it could also have merely referred to subsection (c)'s use of the word "hear." Notably, the list of devices offered does not include hearing aids. And the Senate Committee on Commerce and Economic Development forwarded the bill to the Senate floor without discussion. *See Minutes of the Senate Comm. on Commerce & Econ. Dev.*, 43d Leg., 2d Reg. Sess., at 3 (Ariz. Apr. 23, 1998). Given the equivocal nature of the legislative history before the Senate, it does not change our analysis.

9

¶15     Thus, the legislative history is determinative of the legislative intent. We conclude that the legislature purposely deleted hearing aids from the assistive device warranty statutes and did not intend that hearing aids be included.

¶16     Stein nonetheless contends that the statutory construction maxims "ejusdem generis" and "noscitur a sociis" support his position that the legislature intended to include a hearing aid as "any device" to assist an individual with a disability. These maxims are tools courts use to "aid in ascertaining the legislative intent." *Ariz. Pub. Serv. Co. v. Town of Paradise Valley*, 125 Ariz. 447, 450, 610 P.2d 449, 452 (1980); *see also Norgord v. State ex rel. Berning*, 201 Ariz. 228, ¶ 12, 33 P.3d 1166, 1169 (App. 2001). But these maxims do not apply when "the intent of the legislature is apparent" and will "not be used to obscure and defeat the intent and purpose of the legislation." *Ariz. Pub. Serv. Co.*, 125 Ariz. at 451, 610 P.2d at 453; *see also* 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47:16, at 270 (6th ed. 2000) (noscitur a sociis "will not be applied . . . to thwart the legislative intent"). Here, the legislative history demonstrates that the legislature did not intend the assistive device warranty statutes to apply to hearing aids. Because "the intent of the legislature is apparent," *Ariz. Pub. Serv. Co.*, 125 Ariz. at 451, 610 P.2d at 453, these maxims do not apply here.

¶17     Citing *Walker v. City of Scottsdale*, 163 Ariz. 206, 786 P.2d 1057 (App. 1989), Stein next argues interpreting § 44-1351(1) to exclude hearing aids would render the statute's references to "communication," "hear[ing]," "spe[aking]," and "manipulat[ing] the consumer's environment" meaningless. When interpreting a statute, we must give "each word, phrase, clause, and sentence . . . meaning so that no part of the statute will be void,

10

inert, redundant, or trivial." *Walker*, 163 Ariz. at 210, 786 P.2d at 1061. But the legislature could have intended to exclude hearing aids but leave other devices that assist with those activities covered by the statute. Such a construction would not render any statutory terms meaningless. Thus, the proffered maxims provide little help in interpreting the statute.

¶18 Stein also makes two policy arguments in support of his interpretation. He first argues that interpreting § 44-1351(1) to exclude hearing aids would "trivialize the . . . plain statutory language to the point that it serves no purpose for a large class of disabled individuals, those with hearing aids." But the statute's plain language does not include hearing aids, as we have discussed. And deciding public policy is, within constitutional limits, the province of the legislature. *See Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, ¶ 27, 33 P.3d 518, 525 (App. 2001). We therefore reject this argument.

¶19 Finally, Stein argues the assistive device warranty statutes are remedial, and we should therefore liberally construe § 44-1351(1). But no construction of a statute can contradict legislative intent. *See Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995) ("The primary rule of statutory construction is to find and give effect to legislative intent."). Given the evidence that the legislature intended not to include hearing aids in the definition of "assistive device," we cannot construe the statute to apply to hearing aids even if Stein is correct that the statute is remedial. Accordingly, we reject this argument.

¶20 In light of the significant evidence that the legislature intended to exclude hearing aids from the statute's coverage, we hold that a hearing aid is not an "assistive

11

device" as defined in § 44-1351(1). Accordingly, the trial court did not err by granting summary judgment to Sonus. Because Stein is not the prevailing party on appeal, he is not entitled to the attorney fees he requests under § 44-1355(C). He also is not entitled to the attorney fees he requests under the private attorney general doctrine because he has not "vindicat[ed] an important public policy." *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989).

**¶21**     For the foregoing reasons, the trial court's decision granting summary judgment to Sonus is affirmed, and Stein's request for attorney fees is denied.

_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
GARYE L. VÁSQUEZ, Judge