IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| SWAIN CHAPMAN, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant/ | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | 2 CA-CV 2008-0023 |
| | ) | DEPARTMENT B |
| THE WESTERNER, an Arizona | ) | |
| partnership; DESERT HERITAGE | ) | O P I N I O N |
| LIMITED PARTNERSHIP, an Arizona | ) | |
| limited partnership; SUSAN ONG, an | ) | |
| unmarried woman; ANN and JOHN DOE | ) | |
| KRUSE, wife and husband; CONNIE | ) | |
| GEE, an unmarried woman; and | ) | |
| MARJORIE LOWRANCE, an unmarried | ) | |
| woman, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs/ | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20064502

Honorable Deborah Bernini, Judge

REVERSED AND REMANDED

Mesch, Clark & Rothschild, P.C.
  By Patrick J. Lopez and Scott H. Gan                                      Tucson
                                                              Attorneys for Plaintiff/
                                                    Counter-Defendant/Appellant

Feulner Dorris PLC
  By George J. Feulner                                                      Tucson
                                                            Attorneys for Defendants/
                                                    Counter-Plaintiffs/Appellees

E C K E R S T R O M, Presiding Judge.

¶1        Appellant Swain Chapman appeals from the grant of summary judgment in favor of appellees The Westerner Partnership, Desert Heritage Limited Partnership, Susan Ong, Ann Kruse, Connie Gee, and Marjorie Lowrance (collectively "the partnership"). Chapman argues the court misapplied the law in determining that an appraiser may not change his opinion about a property's value after he has issued an appraisal report. We agree and reverse the grant of summary judgment on that ground, remanding the case to the trial court.

## BACKGROUND

¶2        When reviewing a trial court's grant of summary judgment, we view the facts and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *La Canada Hills Ltd. P'ship v. Kite*, 217 Ariz. 126, ¶ 2, 171 P.3d 195, 196 (App. 2007). In 2003, the partnership agreed to buy Chapman's 12.57 percent interest

2

in its assets.[1]  When the parties could not agree on a buy-out price, they agreed to have an appraisal done to determine the value of the partnership's leasehold interest in the Westerner building, the partnership's primary asset, which would then be used as the basis for determining the value of Chapman's interest.  Chapman and the partnership agreed to engage the services of KB Real Estate Appraisers (KB) to perform the appraisal.

¶3        In its first appraisal, KB valued the Westerner leasehold at $520,000. Chapman notified KB he had concerns about the method, data, stated assumptions, and discount rate KB had used in determining that amount.  KB reviewed the first appraisal based on Chapman's concerns and agreed it contained incorrect facts and assumptions and that the discount rate had been miscalculated.  KB submitted a second appraisal revising its assumptions and the discount rate, and valuing the leasehold between $1.2 and $1.4 million. It asserted that the second appraisal, and not the first, contained the most accurate valuation of the partnership's interest in the building.

¶4        After the partnership refused to buy Chapman's interest based on the second appraisal, he filed a complaint, asking the court, in part, to enforce the buy-out agreement in accordance with the second appraisal.  The partnership moved for partial summary judgment, arguing the court must, as a matter of law, use the first appraisal to determine the value of Chapman's interest.  Chapman responded and filed a cross-motion for summary

---

[1]Although counsel for appellees asserted at oral argument that Ong made the agreement in her individual capacity, appellees admitted in their answer to Chapman's complaint that Ong had agreed to buy Chapman's interest "on behalf of the Westerner."

judgment based on his assertion the buy-out price must be based on the second appraisal. The trial court granted the partnership's motion, finding "no legal grounds which would entitle [Chapman] to a second appraisal."

¶5 Because there were factual issues remaining on Chapman's breach of contract claim against the partnership, the matter proceeded to a bench trial. In its final judgment, the court ordered the partnership to purchase Chapman's interest in the partnership for $26,041, based on the value the first appraisal gave the leasehold. And after determining the partnership was the successful party—because Chapman had not obtained a judgment at trial greater than the amount that had been offered in settlement—the court ordered Chapman to pay the partnership's attorney fees of $65,107.50. This appeal followed.

**MOTION FOR SUMMARY JUDGMENT**

¶6 Chapman argues the trial court erred when it required his partnership interest be calculated based on the first appraisal. In reviewing a trial court's grant of summary judgment, we determine de novo whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, ¶ 5, 126 P.3d 165, 168 (App. 2006).

¶7 The trial court relied solely on *Hirt v. Hervey*, 118 Ariz. 543, 578 P.2d 624 (App. 1978), to support its conclusion that "parties who agree to have value affixed by an appraisal are not entitled to a second appraisal absent fraud or bad faith." But we do not read *Hirt* as setting forth any such rule. Rather, that case addressed the scope of *judicial*

4

*review* of an appraisal. It held that, once parties have agreed to value an asset by appraisal, judicial review of appraisals should be no broader than that which applies to arbitration awards, which are "entitled to finality in all but narrowly defined circumstances such as fraud, corruption, or other prejudicial misconduct." *Id.* at 545, 578 P.2d at 626. In so limiting judicial review, the court reasoned that "when . . . parties agree to have value affixed by an appraisal, they must abide by their own agreement and are not entitled to a new determination by the courts." *Id.*

¶8        Here, Chapman did not seek a "new determination by the courts" of the value of the leasehold. *Id.* Rather, he sought a "new determination" from the appraiser after he alerted the appraiser to mistakes in the first appraisal. And, we find no support in Arizona law for the proposition that an appraiser may not amend, change, or otherwise revise an independently conducted appraisal.

¶9        Nonetheless, the partnership argues the first appraisal "controls" because Arizona law governing arbitrations applies, and based on that law, the appraiser would not be permitted to modify the first appraisal. Additionally, the partnership asserts Chapman and the partnership agreed to be bound by the first appraisal. Specifically, the partnership urges that *Hirt* and its progeny "illustrate that the provisions of the [Uniform] Arbitration Act dealing with when an arbitrator can modify his/her decision should also apply to an appraiser's valuation." *See* A.R.S. §§ 12-1501 through 12-1518 (Uniform Arbitration Act). But we do not read the holding in *Hirt* or its progeny so broadly. Rather, in *Hirt* the court

5

simply limited the scope of judicial review of an appraisal when the appraisal, rather than judicial review, was the parties' intended method for determining contractual liability. 118 Ariz. at 545, 578 P.2d at 626. In so doing, the court relied in part on reasoning from the law of arbitration. *Id.* But nothing in *Hirt* suggests that the court intended to engraft the law of arbitration in its entirety onto every agreement to value property by appraisal.[2]

¶10       Here, the parties intended to have KB perform an appraisal to determine the value of the Westerner leasehold. And although the record contains no written contract between the parties further specifying the terms of their agreement, the record does contain KB's letter of engagement, signed by Ong on behalf of the partnership, and the deposition testimony of Kent Ahrens, the KB employee who prepared the appraisal. The letter of engagement supports the conclusion that, in agreeing to be bound by KB's appraisal, Chapman and the partnership implicitly agreed that KB would follow standard appraisal practices in valuing the asset. Both the letter and Ahrens's testimony suggest that, as a standard practice, appraisers must and do revise erroneous appraisals.

---

[2]Moreover, the Arizona cases since *Hirt* that have applied principles of arbitration law to appraisals have done so only in the context of appraisal clauses in insurance contracts, and more importantly, have done so only to the extent necessary to carry out the intent of the parties. *See Meineke v. Twin City Fire Ins. Co.*, 181 Ariz. 576, 583, 892 P.2d 1365, 1372 (App. 1994) (determining that insurance company's conduct exhibited intent to litigate claim rather than invoke appraisal provision); *Hanson v. Commercial Union Ins. Co.*, 150 Ariz. 283, 285-86, 723 P.2d 101, 104-05 (App. 1986) (reiterating principle from *Hirt* that decisions of appraisers entitled to finality unless appraisers exceeded authority or violated instructions).

**¶11**        According to KB's letter of engagement, "the appraisal report w[ould] be in conformance with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute." Those standards of practice provide that, in performing an appraisal, the appraiser must, *inter alia*, "not commit a substantial error of omission or commission that significantly affects . . . an appraisal," or "render appraisal consulting services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results [of an appraisal], in the aggregate affect[s] the credibility of those results." Uniform Standards of Professional Appraisal Practice (USPAP) Standards Rule 4-1 (2008), *available at* http://commerce.appraisalfoundation.org/html/USPAP2008/index.htm.

**¶12**        By signing the letter of engagement, the partnership conveyed its understanding and agreement that KB would conduct the appraisal in conformity with the specific professional standards mentioned in that letter. As noted above, those standards implicitly require an appraiser to have the necessary flexibility to correct errors or omissions that "affect the credibility of those results." USPAP Standards Rule 4-1(c). In apparent conformity with that requirement, Ahrens, who prepared the appraisal in question on behalf of KB, testified that he regularly revises his appraisal reports when errors are brought to his attention.[3] Indeed, the partnership has never maintained that making such revisions would

---

[3]Specifically, Ahrens testified, "[W]hen we get feedback regarding a report, we always look at it. And if we decide that we were in error, then we revise [it]." He estimated that he amends one out of every twenty appraisals he conducts, or one every two or three

7

deviate from professional standards. Accordingly, based on the record before us, we conclude the parties agreed to accept KB's final appraisal to determine the asset's value. And, here, the final appraisal was the second appraisal.

¶13 In short, the parties intended KB to perform the appraisal in accordance with its own business practices and the uniform standards of practice of the Appraisal Institute. For that reason, we reverse the grant of summary judgment in favor of the partnership because the trial court erred when it found, in contradiction of the parties' agreement, that the first appraisal could not be revised or modified for any reason.

## CROSS-MOTION FOR SUMMARY JUDGMENT

¶14 Chapman urges us to direct the trial court on remand to grant his cross-motion for summary judgment and enter judgment in his favor based on the final, revised appraisal. But the partnership has essentially contended that the revised appraisal was secured by fraud and undue influence. The letter of engagement supports the partnership's threshold contention that it did not agree to be bound by an appraisal secured in that fashion. The ethics code incorporated by that letter includes the canon that "in providing services . . . a member must develop and report unbiased analyses, opinions, and conclusions." Code of Professional Ethics of the Appraisal Institute Canon 3 (2006), *available at* http://www.appraisalinstitute.org/membership/downloads/cpe/CPE Effective 07-01-06.pdf.

---

months. He maintained that his second appraisal represented his estimate of the Westerner leasehold's fair market value, invalidating the first.

8

And the ethical rules forbid "provid[ing] a service . . . that is contingent upon reporting a predetermined analysis, opinion, or conclusion." Code of Professional Ethics E.R. 3-3. We therefore agree that the parties intended that the value of the leasehold be determined by an appraisal conducted free of undue influence or fraud. Because the trial court never addressed whether the partnership presented sufficient facts to challenge the final appraisal on that basis, we remand the case to the trial court to make that determination.[4] *See Callan v. Bernini*, 213 Ariz. 257, ¶ 2, 141 P.3d 737, 738 (App. 2006) (denial of motion for summary judgment generally not appealable); *Roosevelt Sav. Bank v. State Farm Fire & Cas. Co.*, 27 Ariz. App. 522, 526, 556 P.2d 823, 827 (1976) (in reversing grant of summary judgment, appellate court can only direct judgment in favor of party filing cross-motion when "legal issues are identical" and can be decided as a matter of law).

## ATTORNEY FEES

¶15        Both parties have requested their attorney fees incurred on appeal pursuant to A.R.S. § 12-341.01(A), as the successful party in an action arising out of contract. Although we have decided one issue in this appeal in Chapman's favor, we have also

---

[4]Despite Chapman's original contention that the partnership has waived the affirmative defenses of fraud, duress, and undue influence, he essentially invited us at oral argument to remand the case to the trial court to rule on the partnership's claims the final appraisal was not performed ethically. Such a disposition is in harmony with the principle that parties who agree to an appraisal to determine value "must abide by their own agreement and are not entitled to a new determination by the courts," unless they can show fraud or bad faith on the part of the appraiser. *Hirt*, 118 Ariz. at 545-46, 578 P.2d at 626-27.

remanded the case to the trial court for further proceedings.  In our discretion, therefore, we decline to award either party their attorney fees incurred on appeal.  *See, e.g., Maxfield v. Martin*, 217 Ariz. 312, ¶ 16, 173 P.3d 476, 479 (App. 2007) (declining fees on appeal when case "not yet concluded").  However, because we have reversed the trial court's grant of summary judgment, we vacate the court's original award of attorney fees to the partnership.


_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge