394 P.3d 39

**CIENA CAPITAL FUNDING, LLC, a Delaware limited liability company, Plaintiff/Appellee,**

v.

**KRIEG'S, INC., an Arizona corporation; Dean G. Krieg and Mary Louise Krieg, individually and as husband and wife; Krieg Family Trust u/a/d 6/21/96, by and through its trustees, Dean G. Krieg and Mary Louise Krieg, Defendants/Appellants.**

**No. 2 CA-CV 2016–0130**

Court of Appeals of Arizona, Division 2.

Filed April 7, 2017

production of the report. We therefore do not ... otherwise address the merits of the arguments.

**214**

Minkin & Harnisch, PLLC, Phoenix, By Andrew A. Harnisch and Jaclyn Foutz, Counsel for Plaintiff/Appellee

Mesch Clark Rothschild, Tucson, By Gary J. Cohen and David J. Hindman, Counsel for Defendants/Appellants

Judge Miller authored the opinion of the Court, in which Presiding Judge Staring and Judge Wright [1] concurred.

1. The Hon. Timothy M. Wright, the presiding judge of the Gila County Superior Court, is authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court order filed March 1, 2017.

2. At that time, the lender was actually called BLX Capital, LLC, but it later changed its name

## OPINION

MILLER, Judge:

¶ 1 Dean and Mary Krieg (individually and as a marital community), Krieg's, Inc., and the Krieg Family Trust (collectively, "Guarantors") appeal the trial court's grant of partial summary judgment for Ciena Capital Funding, LLC ("Ciena") as to liability for breach of contract. They argue the court should have granted their cross-motion for summary judgment or, alternatively, genuine issues of material fact prevented summary judgment for Ciena. We affirm the court's ruling subject to one modification as explained below.

### Factual and Procedural Background

¶ 2 In September 2007, DI Safford, LLC borrowed $1,128,500 from Ciena [2] in connection with the purchase of a hotel in Safford, Arizona, and executed a loan agreement and promissory note. As part of the transaction, the Guarantors each signed materially identical agreements to guarantee DI Safford's obligations.[3]

¶ 3 By the terms of the agreements, Guarantors "unconditionally, absolutely and irrevocably" guaranteed DI Safford's obligations and liabilities under the loan agreement. The agreements also stated that Guarantors' obligations and liabilities were "direct and primary and not indirect or secondary." Each guaranty further provided:

Guarantor hereby expressly agrees (i) that the liabilities and obligations of Guarantor under this Guaranty shall not in any way be impaired or otherwise affected by the institution by or against any Borrower or any other person or entity of any bankruptcy, reorganization, insolvency or liquidation proceedings, or any other similar proceedings for relief under any bankruptcy law or similar law for the relief of

to Ciena Capital Funding, LLC. The name change did not alter any rights or obligations related to this case.

3. DGMLK, LLC, which is not a party to this action, also entered into an agreement guaranteeing DI Safford's obligations.

debtors; (ii) that any discharge of any of the obligations and/or liabilities hereby guaranteed pursuant to any such bankruptcy or similar law or other law shall not diminish, discharge or otherwise affect in any way the obligations of Guarantor under this Guaranty; and (iii) that upon the institution of any of the above actions such obligations shall be enforceable against Guarantor.

Guarantors also expressly waived "any defense arising by virtue of any ... insolvency, bankruptcy, ... liquidation or dissolution of, or any cessation or limitation of liability from any cause (other than full and irrevocable payment and performance), of any Borrower."

¶ 4 By late 2008, DI Safford was struggling to make payments on its loan. By written agreement that both parties signed in March 2009, DI Safford and Ciena agreed to reduce the monthly payment amount due for March through December 2009. DI Safford continued making payments at the reduced rate until at least November 2011.

¶ 5 In March 2012, DI Safford and DGMLK jointly filed for protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101–1146. The joint plan of reorganization delineated thirteen classes of claims, two of which were pertinent to this action.[4] Class 4 provided that Ciena would "be paid $50,000 in full satisfaction of its claim" of a $1,128,500 deficiency against DI Safford on the closing date, at which point Ciena would no longer retain a lien interest in the hotel property or any personal property. Class 11 provided that Ciena's guaranty claim against DGMLK would be "satisfied in full by DI Safford." Ciena submitted a ballot approving the Class 4 claim on September 20, 2012. On September 26, 2012, Ciena's counsel emailed DI Safford's counsel to confirm they were "in agreement about the non-release of the non-debtor guarantors." DI Safford's counsel replied, "Yes we are in agreement—the Plan does not release or waive potential claims against the non-debtor

guarantors." Notably, the Guarantors did not participate in the bankruptcy, request relief from the guaranties, or submit themselves to the jurisdiction of the bankruptcy court. The same day, Ciena submitted a second ballot that accepted the Class 11 claim, subject to counsel's agreement that "[t]he plan and the Class 11 treatment do not attempt to discharge the debt of the non-debtor guarantors." The bankruptcy court later confirmed the reorganization plan.

¶ 6 Ciena brought this action against Guarantors after bankruptcy confirmation, alleging breach of contract, enforcement of guarantees, and breach of the implied covenant of good faith and fair dealing. Guarantors were represented by the same attorney who had represented DI Safford during the bankruptcy proceedings and who made the representation concerning the reorganization plan having no effect on Guarantors' obligations. Ciena filed a motion for summary judgment on its breach of contract claim, and Guarantors filed a cross-motion for summary judgment on all claims. Following argument, the trial court issued an under-advisement ruling granting Ciena's motion for partial summary judgment in part, and denying Guarantors' motion for summary judgment. The court held Guarantors were liable to Ciena for breach of contract, but did not decide the issues of damages or attorney fees. The court certified its judgment pursuant to Rule 54(b), Ariz. R. Civ. P.

**Jurisdiction**

¶ 7 This court has an independent duty to consider whether we have jurisdiction over an appeal. *Ghadimi v. Soraya*, 230 Ariz. 621, ¶ 7, 285 P.3d 969, 970 (App. 2012). Our jurisdiction is purely statutory. *See id.* Although in general only final judgments are appealable, *id.*, A.R.S. § 12–2101(A)(6) provides an express exception to the general rule, permitting an appeal from "an interlocutory judgment that determines the rights of the parties and directs an accounting or oth-

---

4. A Chapter 11 debtor may file a proposed plan of reorganization organizing claims and interests into discrete classes and recommending a resolution as to each class. *See generally* 11 U.S.C. §§ 1121, 1123. Creditors whose claims are im-

paired under the plan vote on the plan by ballot, *see* 11 U.S.C. § 1126; Fed. R. Bankr. P. 3018(c), and then the bankruptcy court conducts a hearing to determine whether to confirm the plan, 11 U.S.C. § 1128.

er proceeding to determine the amount of recovery." A grant of summary judgment in favor of a plaintiff as to liability is appealable under this paragraph, provided that it is signed, it contains express language indicating finality, it determines the rights of the parties on liability, and it determines that the amount of recovery is the only remaining question to be resolved. *Cook v. Cook*, 26 Ariz.App. 163, 168, 547 P.2d 15, 20 (1976); *see also Bilke v. State*, 206 Ariz. 462, ¶¶ 23, 26–28, 80 P.3d 269, 274, 275 (2003) (approving *Cook* and adding that Rule 54(b) certification sufficient to establish final determination of parties' rights). The trial court's summary judgment ruling in the present case meets each of these requirements; therefore, we have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 12–2101(A)(6).

### Choice of Law

¶ 8 As an initial matter, Ciena argues New York law governs this dispute, while Guarantors maintain Arizona law applies. The trial court did not expressly decide which law applied, making only a general reference to its reliance on "the cited case law" from the cross-motions for summary judgment, which included cases from both Arizona and New York. We review choice-of-law issues de novo. *Pounders v. Enserch E&C, Inc.*, 232 Ariz. 352, ¶ 6, 306 P.3d 9, 11 (2013).

¶ 9 Each guaranty agreement contains this choice-of-law provision:

[T]his Guaranty shall be governed, at the Lender's option by: (A) the laws of the state of New York, or (B) if guarantor resides or is organized in a state other than New York or if collateral has been pledged to secure the obligations guaranteed herein, then by the laws of the state or states where such collateral is located, or the state of the guarantor's residence or organization.

It is undisputed that the collateral hotel is located in Arizona.

¶ 10 In its amended complaint, Ciena asserted, "The Guarantees . . . are governed by the laws of the state of New York or, alternatively, the laws of the state of Arizona." Ciena also cited certain Arizona attorney fees statutes in support of its fee request in the amended complaint. Then, in its motion for partial summary judgment, which was the first substantive motion filed in the case, Ciena stated, "The Guarant[i]es are governed by New York law."

¶ 11 As the forum state, the law of Arizona governs procedural matters as well as the choice of substantive law. *Id.* ¶ 8. Arizona follows the Restatement (Second) of Conflict of Laws (1971) ("Restatement") to determine which state's law applies in an action arising out of contract. *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207, 841 P.2d 198, 202 (1992). An express choice-of-law provision in a contract ordinarily will be given effect, subject to certain inapposite exceptions. *See id.* at 208, 841 P.2d at 203; *see also Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979) (contractual choice-of-law clause entered into without fraud or unfair bargaining will be enforced, so long as it is reasonable at time of litigation and does not deprive litigant of day in court). Absent a "contrary indication of intention," a choice-of-law provision's reference to the law of a state means that state's "local law," rather than its whole "law" including its choice-of-law rules. Restatement §§ 186, cmt. b; 187 cmt. h.

¶ 12 The parties agree that the choice-of-law clause in the guaranty agreements is enforceable. Guarantors argue that Ciena exercised its option under the clause, selecting Arizona law to govern this dispute in its amended complaint, notwithstanding its clear statement later in its motion for partial summary judgment that New York law applies. Guarantors offer two arguments in support of their position, but we do not find them persuasive.

¶ 13 First, Guarantors maintain that Ciena selected Arizona law by citing certain Arizona attorney fees statutes in its amended complaint. However, these citations are not inconsistent with Ciena's ultimate selection of New York law as controlling. Assuming for the sake of argument that Ciena selected New York law to apply, the forum would adopt New York law concerning whether issues are classified as substantive or proce-

dural. Restatement § 7 cmt. d & illus. 2 ("A concept should be classified in the way it is classified in the body of law which the court is applying."); *see, e.g., O'Leary v. Ill. Terminal R.R. Co.*, 299 S.W.2d 873, 877 (Mo. 1957) (Missouri court applying Illinois law would adopt Illinois case law determination of whether issue of burden of proof on contributory negligence was substantive or procedural). New York regards the issue of attorney fees as procedural for choice-of-law purposes. *See, e.g., Cent. Laborers' Pension Fund ex rel. Goldman Sachs Grp., Inc. v. Blankfein*, 34 Misc.3d 456, 931 N.Y.S.2d 835, 840 (Sup. Ct. 2011). And the local law of the forum governs procedural matters. *Pounders*, 232 Ariz. 352, ¶ 8, 306 P.3d at 11. Therefore, Ciena's citation of Arizona attorney fees statutes is consistent with its later selection of New York law to govern the guaranties.

¶ 14 Second, Guarantors argue Ciena selected Arizona law by including in its amended complaint a separate claim for breach of the implied covenant of good faith and fair dealing. Citing *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002), and *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005), Guarantors assert that under New York law, this is not a claim for which relief can be granted if there is also a breach of contract claim with the same factual basis. Even assuming (without deciding) that this is a correct statement of New York law, it would not follow that Ciena selected Arizona law in its amended complaint.[5] At most, it would mean that Ciena's claim for breach of the implied covenant of good faith and fair dealing should be dismissed in light of its later selection of New York law. *Cf. Kenerson v. Stevenson*, 621 F.Supp. 1179, 1180–81 (D. Me. 1985) (Maine federal district court, applying New Hamp-

shire law, determined whether plaintiff failed to state claim for exemplary damages by reference to New Hampshire substantive damages law).

¶ 15 Ciena's statement in its motion for partial summary judgment that "[t]he Guarant[i]es are governed by New York law" was a valid and unambiguous exercise of its contractual option to select the applicable law, and did not contradict any earlier position it had taken in the amended complaint. Ciena's election is reasonable and does not deny Guarantors their day in court.[6] We apply New York law.

### Partial Summary Judgment as to Liability

■ ¶ 16 Guarantors contend the trial court erred by denying their motion for summary judgment[7] and instead granting in part Ciena's motion for partial summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Viewing the facts in the light most favorable to the party against whom summary judgment was entered, we determine de novo whether any genuine dispute of material fact exists and whether the trial court applied the law correctly. *In re Estate of Olson*, 223 Ariz. 441, ¶ 11, 224 P.3d 938, 941 (App. 2010); *see also Target Corp. v. Prestige Maint. USA, Ltd.*, 351 P.3d 493, ¶¶ 18–19 (Colo. App. 2013) (forum court will use its own standards of appellate review even if applying another jurisdiction's substantive law), *citing* Restatement § 122 cmt. a.

■ ¶ 17 "On a motion for summary judgment to enforce a written guaranty, all

---

5. Indeed, the amended complaint expressly left open the question of the applicable law, stating, "[T]he laws of the state of New York or, alternatively, the laws of the state of Arizona" control.

6. At oral argument, Guarantors' counsel argued Guarantors were prejudiced by not knowing which law would control during the eleven-month period between Ciena's complaint and its motion for summary judgment. But Ciena's motion for summary judgment was the first substantive motion filed in the case, and Guarantors did not file a motion seeking clarification as to the

applicable law at any point. Guarantors have not shown prejudice from Ciena's first election of New York law in its motion for summary judgment.

7. A denial of summary judgment is generally not an appealable order. *See, e.g., Hourani v. Benson Hosp.*, 211 Ariz. 427, ¶ 4, 122 P.3d 6, 9 (App. 2005). However, we need not determine whether we have jurisdiction over this aspect of Guarantors' appeal because, as discussed below, the trial court properly granted partial summary judgment to Ciena.

that the creditor need prove is an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty." *City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 681 N.Y.S.2d 251, 253 (1998). As with other contracts, the court will interpret guaranty agreements to reflect the parties' intentions. *CIT Group/Credit Fin., Inc. v. Weinstein*, 261 A.D.2d 203, 690 N.Y.S.2d 36, 36–37 (1999).

¶ 18 Guarantors argue that because the reorganization plan described DI Safford's payment of $50,000 to Ciena as a "full satisfaction" of Ciena's Class 4 deficiency claim against DI Safford, the payment completely extinguished DI Safford's debt and left nothing for Guarantors to continue to guarantee as a matter of law. They attempt to draw a distinction between "satisfaction" of a claim on the one hand, and mere "release," "waiver," "modification," or "discharge" of a claim on the other. They cite no New York cases supporting such a distinction. The trial court found this argument "unpersuasive and unsupported by law," particularly in light of trial counsel's September 26, 2012 email and the recital on the September 26, 2012 ballot which both confirmed that the plan would not affect the liability of any of DI Safford's guarantors who, unlike DGMLK, were not parties to the bankruptcy action. The Guarantors in the instant appeal were not parties to the bankruptcy action.

¶ 19 Guarantors fail to explain how they can assert this defense when, in the guaranty agreements, they expressly waived "any defense arising by virtue of any … bankruptcy … or any cessation or limitation of liability from any cause (other than *full* and irrevocable payment and performance), of any Borrower" (emphasis added). But even if the defense were not waived, it is firmly rejected by New York law. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Perlmutter (In re South Side House,*

*LLC)*, 470 B.R. 659, 673, 676 (Bankr. E.D.N.Y. 2012) ("A debtor's bankruptcy case does not relieve a guarantor of its liability under the guaranty."); *Union Tr. Co. of Rochester v. Willsea*, 275 N.Y. 164, 9 N.E.2d 820, 820–21 (1937) (even if creditor's acceptance of stock incident to debtor's bankruptcy reorganization plan extinguished debtor's obligation, it "did not, in any way, affect the independent guaranty agreement" between creditor and guarantor); *see also* 11 U.S.C. § 524(e) ("discharge of a debt of the debtor" under bankruptcy law "does not affect the liability of any other entity … for[ ] such debt").[8]

¶ 20 Guarantors' argument is also at odds with other language in the guaranty agreements. The guaranties provide that Guarantors' obligations are "direct and primary and not indirect or secondary," and are "absolute, independent, unconditional, and irrevocable." The parties expressly agreed that "any discharge" of any of DI Safford's liabilities or obligations pursuant to bankruptcy law would "not diminish, discharge or otherwise affect in any way the obligations of Guarantor[s]," and that the Guarantors' obligations would be enforceable in full "upon the institution of" bankruptcy proceedings by DI Safford. Guarantors further agreed they would not be released until the $1,128,500 loan, specified in the written loan agreement, was "paid in full." New York courts have affirmed summary judgment for a creditor against a guarantor where the guaranty agreement contained similarly clear language contemplating that the relevant obligations of the guarantor would survive the debtor's bankruptcy. *See, e.g.*, *Weinstein*, 690 N.Y.S.2d at 36–37 (noting such case was especially appropriate for summary judgment because intent of parties was clear from face of agreement).[9] The trial court correctly determined Guarantors are liable to Ciena for breach of contract as a matter of law.

---

**8.** Guarantors do not address these cases in their reply brief, instead limiting their argument to Arizona case law they contend is controlling.

**9.** Guarantors argue courts generally construe guaranty agreements to limit guarantors' liability, and resolve ambiguities in those agreements against the drafter. But both of these principles

are used to help interpret ambiguous guaranties. *See Jacobson v. Sassower*, 66 N.Y.2d 991, 499 N.Y.S.2d 381, 489 N.E.2d 1283, 1284 (1985); *Raven Elevator Corp. v. Finkelstein*, 223 A.D.2d 378, 636 N.Y.S.2d 292, 293 (1996). The agreements at issue here reflect the parties' intent with clear and unambiguous language.

### Factual Dispute Regarding
### Date of Breach

 ¶ 21 In the alternative, Guarantors argue the trial court erred in determining there was no genuine dispute as to the date they breached the guaranty agreements. After granting partial summary judgment for Ciena on the issue of liability, the court found "for purposes of liability of all [Guarantors] with respect to [breach of contract], the default occurred on February 1, 2010." Guarantors dispute that finding, pointing out they attached to their motion for summary judgment an affidavit from Guarantor and appellant Mary Krieg, who was also formerly a principal of DI Safford. In the affidavit, Ms. Krieg avowed it was her understanding that Ciena had orally agreed to accept reduced monthly loan payments from DI Safford for an undefined period beyond the end of 2009, and Ciena had in fact accepted such payments through November 2011, without objection.

 ¶ 22 Ciena argues the affidavit was insufficient to raise an issue of fact because guaranty agreements fall within New York's statute of frauds and may not be orally modified. *See* N.Y. Gen. Oblig. Law § 5–701(a)(2); *see also Joseph R. Awad & Co. v. Pillsbury Mills, Inc.*, 9 A.D.2d 870, 193 N.Y.S.2d 306, 307 (1959) (per curiam) (substantial modification of agreement required to be in writing must itself be in writing). But Ms. Krieg did not avow that the guaranty agreements were orally modified, only that the lender agreement between Ciena and DI Safford was. New York's statute of frauds does not mandate that the contract between Ciena and DI Safford, or modifications thereto, be in writing. *See* N.Y. Gen. Oblig. Law § 5–701(a); *see also Rosbach v. Indus. Trading Co.*, 81 F.Supp.2d 522, 525–26 (S.D.N.Y. 2000) ($80,000 loan contract not within New York statute of frauds because capable of being performed within one year). Oral modifications to that contract were not barred by law.[10]

 ¶ 23 Furthermore, under New York law, "[m]odifications of written contracts may be proved circumstantially by the conduct of the parties subsequent to the agreement." *Chase v. Skoy*, 146 A.D.2d 563, 536 N.Y.S.2d 512, 513 (1989). Ciena's acceptance of payments from DI Safford until at least November 2011 without objection is arguably inconsistent with a default date of February 1, 2010. *Cf. B. Reitman Blacktop, Inc. v. Missirlian*, 52 A.D.3d 752, 860 N.Y.S.2d 211, 212–13 (2008) (defendant waived right of written modification contained in written contract where parties' conduct demonstrated mutual departure from written agreement). The trial court erred in determining there was no genuine issue of fact as to the date that DI Safford breached the loan agreement.

¶ 24 This error, however, was irrelevant because liability for breach of contract was the only issue on which the trial court granted summary judgment. To prove liability, Ciena only needed to show the fact of default, not the exact date of default. *See Clarose Cinema Corp.*, 681 N.Y.S.2d at 253. It is undisputed that "the commencement of any proceeding under any bankruptcy ... laws by ... [DI Safford]" was an "Event of Default" under the terms of the loan agreement. It is also undisputed that DI Safford commenced bankruptcy proceedings under federal bankruptcy law in March 2012. Thus, there is no dispute that DI Safford defaulted; at the latest, it did so when it filed a petition in bankruptcy court. *See First Nationwide Bank v. Brookhaven Realty Assocs.*, 223 A.D.2d 618, 637 N.Y.S.2d 418, 421 (1996) (bankruptcy default clause enforceable). Summary judgment was therefore proper as to liability.

¶ 25 The fact dispute is only material to the issue of damages, on which the trial court explicitly did not rule. Accordingly, we vacate the court's finding of a date of default,[11] and

---

10. Even though the loan agreement between DI Safford and Ciena by its terms purported to forbid any alteration or amendment thereto without a signed writing, New York law allows for oral modification of a contract even if it contains such a provision. *See Estate of Kingston v. King-*

*ston Farms P'ship,* 13 N.Y.S.3d 748, 750, 130 A.D.3d 1464 (App. Div. 2015).

11. Our vacatur order should not be read to prevent the trier of fact from determining that February 1, 2010, was the date of default, if that is

so modified, we affirm the court's ruling. We revest jurisdiction in the trial court for further proceedings to resolve the issue of damages for breach of contract and any other outstanding issues in the case.

### Disposition

¶ 26 We affirm the judgment of the trial court as modified in this decision. Both Ciena and Guarantors request their attorney fees and costs on appeal, citing A.R.S. § 12–341.01, but because the case is still ongoing before the trial court, in our discretion we decline the requests without prejudice for the parties to request appellate attorney fees at the conclusion of the case. *See Chapman v. The Westerner*, 220 Ariz. 52, ¶ 15, 202 P.3d 517, 521 (App. 2008).

what the evidence shows in further proceedings upon remand.