IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

BSI HOLDINGS, LLC, *Plaintiff/Appellee,*

*v.*

ARIZONA DEPARTMENT OF TRANSPORTATION, *Defendant/Appellant.*

No. 1 CA-TX 16-0003
FILED 7-13-2017

———————————————

Appeal from the Arizona Tax Court
No.  TX2014-000444
The Honorable Christopher T. Whitten, Judge

**VACATED AND REMANDED**

———————————————

COUNSEL

Ryan Rapp & Underwood, PLC, Phoenix
By Christopher T. Rapp
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Mark Ingle
*Counsel for Defendant/Appellant*

---

## OPINION

Presiding Judge Margaret H. Downie delivered the opinion of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler[1] joined.

---

**D O W N I E**, Judge:

**¶1**          The Arizona Department of Transportation ("ADOT") appeals the tax court's entry of summary judgment in favor of BSI Holdings, LLC ("BSI").  We hold that, in calculating the annual license tax due for a non-resident aircraft based in Arizona, the word "day" in Arizona Revised Statutes ("A.R.S.") section 28-8336 means any calendar day during which the aircraft was on the ground in Arizona for any period of time.  Because the tax court applied a materially different definition, we vacate its judgment and remand for further proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

**¶2**          BSI is an Oregon limited liability company that was formed to purchase, operate, and maintain a dual engine turbo-jet (the "Jet").  During the period relevant to this appeal, the Jet was based in Arizona and regularly flew in and out of the Scottsdale Airport, where BSI maintained a tie-down arrangement/hangar agreement.  For the period of time at issue, the Jet was used exclusively by Arizona resident (and BSI member) Richard Burke for personal purposes, including "family trips, transportation to family events, drop-off and pick-up of family and friends."

**¶3**          In 2004, BSI and ADOT executed a "Closing Agreement" that settled a dispute between them regarding the aircraft license tax due for 2003 and 2004.  Under the terms of the Closing Agreement, BSI paid no tax for 2003.  For 2004, it paid the non-resident rate applicable to aircraft that are present in Arizona for more than 90 days but fewer than 210 days.  BSI thereafter paid that same rate for tax years 2005 through 2012.

---

[1]      The Honorable Donn Kessler, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

**¶4**    ADOT conducted an audit and concluded the Jet had been based in Arizona for *more* than 209 days each audited year and that BSI should therefore have paid the resident tax rate.   ADOT issued an assessment for $161,004.   ADOT also notified the Federal Aviation Administration of the assessment, and a lien was recorded against the Jet. *See* A.R.S. § 28-8330(A) ("The license tax, registration fee and penalty constitute a lien on the aircraft on which they are due from the due date.").

**¶5**    After an unsuccessful administrative appeal, BSI filed a complaint in the tax court, alleging ADOT improperly applied the tax rates set forth in A.R.S. § 28-8336 and was estopped from imposing assessments for tax years 2004 through 2012.   BSI subsequently moved for partial summary judgment, arguing: (1) the Closing Agreement barred the 2004 assessment; (2) ADOT was equitably estopped from imposing assessments for tax years 2004 and 2005; and (3) the lien against the Jet was illegal. ADOT responded to BSI's motion and cross-moved for summary judgment as to the validity of the lien and the assessment for the eight tax years at issue.   BSI responded to ADOT's motion and cross-moved for summary judgment, arguing the assessment was invalid for all tax years.

**¶6**    The tax court granted BSI's cross-motion for summary judgment, ordering that the assessment be vacated and abated.   The court concluded the Jet was present in Arizona "for more than 90 days, but less than 210 days, in each of the subject tax years" and was thus eligible for the non-resident tax rate BSI had previously paid.   The court also awarded BSI attorneys' fees and costs.   After the court issued a final judgment, ADOT timely appealed.   We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -170(C).

## DISCUSSION

**¶7**    An "annual license tax is imposed on all aircraft based in this state and required to be registered" unless an exemption applies.   A.R.S. § 28-8335; *see also* Ariz. Const. art. IX, § 15.   Aircraft owned by Arizona residents are taxed at .5% of the "average fair market value" of the aircraft. *See* A.R.S. § 28-8335(B).   Aircraft owned by non-residents may receive more favorable tax treatment, depending on the number of days they are based in Arizona:

| Based in Arizona | Tax Rate |
| --- | --- |
| 1-90 days | Exempt from tax |
| 91-209 days | .1% of average fair market value |
| 210-365 days | .5% of average fair market value (resident rate) |

A.R.S. §§ 28-8322, -8336, -8335(B).

¶8        The parties dispute whether the Jet was based in Arizona for more than 209 days within the meaning of A.R.S. § 28-8336.  We review issues of statutory interpretation, as well as grants of summary judgment, *de novo.  See Ariz. Dep't of Revenue v. Salt River Project Agric. Improvement & Power Dist.*, 212 Ariz. 35, 38, ¶ 13 (App. 2006).  Ordinarily, an administrative agency's interpretation of a statute it implements is given great weight.  *See Baca v. Ariz. Dep't of Econ. Sec.*, 191 Ariz. 43, 45–46 (App. 1998).  "However, the agency's interpretation is not infallible, and courts must remain the final authority on critical questions of statutory construction."  *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211 (App. 1989).

## I.        A.R.S. § 28-8336

¶9        We begin with the plain language of the statute, which is "the most reliable indicator" of its meaning.  *Sempre Ltd. P'ship v. Maricopa County*, 225 Ariz. 106, 108, ¶ 5 (App. 2010).  Section 28-8336 states:

> The license tax for a nonresident whose aircraft is based in this state for more than ninety days but less than two hundred ten days in a calendar year is equal to one-tenth of one per cent of the average fair market value of the particular make, model and year of aircraft if the aircraft is not engaged in any intrastate commercial activity.

¶10        BSI concedes the Jet was based in Arizona for more than 90 days during each of the tax years at issue, and the parties agree the Jet was not engaged in intrastate commercial activity.  The parties disagree, though, about how to calculate the number of days the Jet was "based in this state."

¶11        BSI contends the word "day" in § 28-8336 means a 24-hour period "beginning on one midnight and ending on the next ensuing midnight."  According to BSI, if the Jet landed outside Arizona during that

24-hour period, it was not based in Arizona for that particular day.[2] Applying that standard, BSI calculates the following day counts for the Jet:

| Tax Year | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|
| Day Count | 173 | 152 | 150 | 159 | 190 | 206 | 162 | 187 | 162 |

¶12 ADOT, on the other hand, argues "day" means "any part or portion of a day or any amount of time" the Jet spends on the ground in Arizona. Relying on that definition, ADOT contends the Jet was based in Arizona for more than 209 days each tax year:

| Tax Year | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|
| Day Count Pilot Logs | 229 | 232 | 234 | 249 | 259 | 274 | 260 | 276 | 293 |
| Day Count Flightwise[3] | 228 | 217 | 218 | 235 | 243 | 236 | 236 | 247 | 236 |

¶13 In adopting BSI's interpretation of the statute, the tax court noted that the legislature has not defined "day" and that the parties presented nothing "to indicate whether the legislature intended for 'day' to mean an entire 24-hour period or some lesser portion of it." Concluding that the statutory ambiguity "must be construed in the taxpayer's favor," the tax court ruled that the word "day" in § 28-8336 means "any period of twenty four hours."

¶14 We agree with the tax court that the statute is ambiguous. *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994) (A statute is ambiguous if its text "allows for more than one rational interpretation."). We disagree, however, that the ambiguity persists after applying recognized tools of statutory construction. *See id.* (if the meaning of a statute is uncertain, courts may employ tools of statutory interpretation). Although courts "liberally construe statutes imposing taxes in favor of the taxpayers and against the government," *Salt River Project*, 212 Ariz. at 38, ¶ 14, that tenet applies only if a statute remains ambiguous after utilizing tools of statutory

---

[2] Although its briefing suggested that simply leaving Arizona airspace was sufficient, BSI conceded at oral argument before this Court that the Jet is properly considered based in Arizona on a particular day if it has not *landed* outside the state during that day.

[3] Flightwise is an aviation application designed to track flights.

interpretation. *See Harris Corp. v. Ariz. Dep't of Revenue*, 233 Ariz. 377, 384, ¶ 23 (App. 2013) (The maxim that ambiguous statutes are construed in favor of taxpayers applies only "after considering the interpretive guidance provided by the legislature, and applying standard rules of construction.").

**¶15**　　"[T]he law takes no notice of fractions of a day and deems any fraction of a day to be a 'day.'" *Maciborski v. Chase Serv. Corp. of Ariz.*, 161 Ariz. 557, 562 (App. 1989); *see also Lagandaon v. Ashcroft*, 383 F.3d 983, 985, 991, 993 (9th Cir. 2004) (interpreting a statute requiring aliens to be "physically present in the United States for a continuous period of not less than 10 years" to include any portion of a day, noting that, "[i]n the space of a day all the twenty four hours are usually reckoned; the law generally rejecting all fractions of a day, in order to avoid disputes"); *Talbott v. Caudill*, 58 S.W.2d 385, 386 (Ky. 1933) ("It is the common-law rule that judicially a day is the whole or any part of the period of twenty-four hours, from midnight to midnight."); *cf. State v. Carnegie*, 174 Ariz. 452, 454 (App. 1993) (rejecting contention a defendant must be in custody "for a full twenty-four hours" to receive pre-sentence incarceration credit for a particular day). ADOT's interpretation of "day" is consistent with this principle, and no legislative history suggests an intention to deviate from this long-standing common-law concept.

**¶16**　　ADOT's interpretation also furthers the implicit goals of the statutory scheme. *See Hayes*, 178 Ariz. at 268 (courts attempt to interpret statutes in a manner that furthers perceived goals). In evaluating legislative intent, we consider the statute's context, its language, subject matter and historical background, its effects and consequences, and its spirit and purpose. *Id.*

**¶17**　　During all of the tax years at issue here, the statutory scheme governing aircraft registration and taxation mandated that aircraft license tax assessments go directly into the state aviation fund ("Fund") "for use in the construction, development and improvement of airports." A.R.S. § 28-8345. Fund expenditures cover items such as construction and maintenance of runways, taxiways, and aprons where aircraft park; lighting; aircraft guidance systems; weather observation and reporting equipment; and signage. BSI did not controvert ADOT employee Susan J. Wylezik's affidavit regarding how aircraft based in Arizona use airport infrastructure and services:

> Aircraft that conduct aircraft operations use an airport's guidance signage, heliports, rotating beacon, runway extension and strengthening, Medium Intensity Runway

Lighting and High Intensity Runway Lighting, Visual Guidance System, taxiway, weather observation system, wildlife deterrent fencing, and wind cone equipment. Aircraft that fly in and out also benefit from the removal of hazards that are located within navigable airspace.

¶18 The graduated license tax scheme for non-resident aircraft suggests a legislative intent to increase the tax rate as the use of Arizona airport facilities increases, not to decrease the rate the more a non-resident owner uses Arizona airports. Applying BSI's definition would frustrate such a purpose and lead to anomalous (if not absurd) results. *See, e.g.*, *State v. Estrada*, 201 Ariz. 247, 251, ¶17 (2001) (Courts avoid interpreting statutes in a manner leading to an absurd result, meaning one "so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion.").

¶19 Moreover, elsewhere in the same title, chapter, and article as § 28-8336, the legislature identifies "full" time periods when it intends such a measure. *See, e.g.*, A.R.S. § 28-8324(B)(1) ("The license tax for that year on the aircraft shall be reduced by one-twelfth for *each full month* of the calendar year that has expired." (emphasis added)). The legislature also understands how to override the common law definition discussed *supra*, ¶ 15, and define a 24-hour period as a "day" when it wishes to do so. *See, e.g.*, A.R.S. §§ 11-1601(9) ("'Working day' means a twenty-four hour period . . . ."), 48-3641(8) (same); *see also* "*Day*," Black's Law Dictionary (10th ed. 2014) (offering various definitions for "day," and stating that, "A statute referring to an *entire day* contemplates a 24-hour period beginning and ending at midnight.").

¶20 We hold that an aircraft is based in Arizona within the meaning of A.R.S. § 28-8336 for any day during which it is physically present on the ground in this state for any period of time. Applying this definition, evidence of record strongly suggests the Jet was based in Arizona for more than 209 days during each tax year at issue. At oral argument before this Court, however, BSI would not concede that fact. Therefore, on remand, the tax court must resolve that factual issue, applying the definition of "day" adopted herein.

¶21 Finally, we disagree with BSI's contention that ADOT impermissibly adopted and uniformly applied a policy affecting its substantive or procedural rights without following the requirements of A.R.S. §§ 41-1091, -1091.01 or the Administrative Procedures Act, A.R.S. §§ 41-1001, *et seq.* BSI's reliance on *Ariz. State Univ. v. Ariz. State Ret. Sys.*,

237 Ariz. 246 (App. 2015), is unavailing. In that case, the state retirement system adopted a policy concerning newly promulgated statutes regarding employer termination incentive programs that affected employers' substantive rights. *Id.* at 248–49, ¶¶ 5–8. The policy involved a "complex calculation with subjective components," *id.* at 251, ¶ 19, requiring the exercise of substantial "judgment and discretion." *Id.* at 252, ¶ 21. No comparable policy is at issue here. We simply have an agency interpreting a term in a statute. Administrative agencies need not (and indeed, could not realistically) define, disclose, and codify their interpretations of every Arizona statute relevant to their duties. Furthermore, it is the statute itself, as opposed to ADOT's interpretation and implementation of it, that has affected BSI's rights.

## II.     Estoppel

**¶22**          We do not reach BSI's estoppel claims because the tax court has not yet considered them. On remand, the court may further address those claims.

## CONCLUSION

**¶23**          We vacate the entry of summary judgment in favor of BSI, as well as the award of attorneys' fees and costs to BSI. We remand to the tax court for further proceedings consistent with this opinion. ADOT is entitled to recover its taxable costs on appeal, if any, upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA