IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BSI HOLDINGS LLC, *Plaintiff/Appellee*,

*v.*

ARIZONA DEPARTMENT OF TRANSPORTATION, *Defendant/Appellant*.

No. 1 CA-TX 20-0005
FILED 8-12-2021

Appeal from the Arizona Tax Court
No. TX2014-000444
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Ryan Rapp Underwood & Pacheo, PLC, Phoenix
By Christopher T. Rapp, Lesli M. H. Sorensen
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Benjamin H. Updike
*Counsel for Defendant/Appellant*

---

**OPINION**

Judge Lawrence F. Winthrop[1] delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

**¶1**        Arizona authorizes the imposition of a state license tax on nonresident aircraft owners equal to one-tenth of one per cent of the fair market value of the aircraft. A.R.S. § 28-8336. An aircraft subject to this tax (1) must not be engaged in any intrastate commercial activity and (2) must be "based in" Arizona "for more than ninety days but less than two hundred ten days in a calendar year." *Id.*

**¶2**        At issue in this tax appeal is how to calculate the number of days such an aircraft is based in Arizona, which requires determining the meaning of the terms "based in" and "day" used in A.R.S. § 28-8336. The tax court concluded these terms are ambiguous, construed them in favor of the taxpayer, BSI Holdings, LLC ("BSI"), and granted summary judgment in favor of BSI. The Arizona Department of Transportation ("ADOT") appeals that ruling, arguing the tax court should have applied a "domiciliary analysis" to the definition of the term "based in" and applied a "totality of the circumstances" standard to that domiciliary analysis. To do so here, however, would require us to craft a new weighted-factor test based on non-statutory language and previously unannounced factors, and would thus deprive BSI of the clear notice that should be afforded any taxpayer. Accordingly, we conclude the tax court did not err in declining to adopt a domiciliary analysis in this case and in finding the statutory text irreconcilably ambiguous as applied to BSI. We therefore affirm the tax court's judgment in favor of BSI.

---

[1]        Judge Lawrence F. Winthrop was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2021. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to Arizona Revised Statutes ("A.R.S.") section 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Winthrop as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

## FACTS AND PROCEDURAL HISTORY

**¶3**        BSI is an Oregon limited liability company formed to own a Gulfstream dual-engine turbo jet, FAA tail number N608BG ("the aircraft"). BSI purchased the aircraft in 2003 for the personal use of Richard Taylor Burke, Sr., an Arizona resident.  BSI listed its address and base of operations as Portland, Oregon, and has since received mail from ADOT at that address.

**¶4**        BSI registered the aircraft in Arizona and regularly flew in and out of Scottsdale Airport.  From 2004 to 2012, BSI maintained a monthly tie-down/hangar agreement at that airport, but the aircraft also traveled outside of Arizona, and BSI had similar agreements in other states during that time.  At no point did BSI have any such agreement in Oregon, nor did the aircraft fly to Oregon after BSI purchased it.

**¶5**        Arizona assesses a variable rate license tax against owners of private aircraft based on residency and the number of days the plane is based in Arizona.  ADOT's Aeronautics Division auditors take the position that the nonresident license tax rate under A.R.S. § 28-8336 cannot apply to an owner of an aircraft that is based in Arizona more than 209 days in any given calendar year.  Thus, ADOT treats aircraft that are based in Arizona for at least 210 days each calendar year as subjecting the aircraft owner to the license tax rate under A.R.S. § 28-8335(B), which is five times greater than the tax rate applicable under A.R.S. § 28-8336.

**¶6**        Through 2012, BSI claimed nonresident tax status under A.R.S. § 28-8336.  In its annual filings, BSI represented the aircraft was not based in Arizona for more than 209 days each year.

**¶7**        ADOT first challenged BSI's claimed tax status in 2003. Eventually, the parties entered a settlement agreement wherein BSI paid no license tax for 2003.  BSI then paid the nonresident tax rate under § 28-8336 for 2004 and claimed the same rate from 2005 through 2012.

**¶8**        In 2013, ADOT auditors concluded the BSI aircraft had been in Arizona for more than 210 days each year from 2004 through 2012 and therefore was subject to the full license tax rate prescribed in A.R.S. § 28-8335 during the audit period.  Based on data available on Flightwise, a third-party flight tracking website, ADOT calculated the BSI aircraft was in

Arizona for at least 217 days each year from 2005 through 2012.[2] On that basis, ADOT assessed BSI an additional $161,004 and recorded a lien against the aircraft.

¶9 BSI brought an unsuccessful administrative appeal that focused on the definition of what constituted a "day." The administrative law judge ("ALJ") adopted ADOT's interpretation that a "day" as used in the statute meant any calendar day during which an aircraft spent any time on the ground in Arizona.

¶10 BSI then brought this action in the tax court. The tax court considered the residency/tax rate issue on cross-motions for summary judgment that focused on the correct interpretation of the word "day" in A.R.S. § 28-8336. BSI contended a "day" under § 28-8336 meant a continuous 24-hour period from one midnight to the ensuing midnight. Consistent with its previous argument and the ALJ's decision, ADOT asserted a "day" meant any calendar day during which an aircraft spent any time on the ground in Arizona. The legal question, therefore, turned at that point on what constituted a "day" under § 28-8336.

¶11 After learning that no statute, formal administrative rule, or written ADOT policy existed interpreting the statute or providing definitions for the statutory terminology, the tax court granted summary judgment in favor of BSI. The court reasoned that "the legislature did not define the word 'day,' nor did it define what being 'based in' Arizona means. . . . The Court simply has nothing before it to indicate whether the legislature intended for 'day' to mean an entire 24-hour period or some lesser portion of it." The tax court found § 28-8336 ambiguous and, as a result, construed it in favor of the taxpayer, BSI.

¶12 On appeal, this court found the statute ambiguous, but adopted ADOT's interpretation, thus effectively ruling in favor of the agency pending resolution on remand of the number of days the aircraft was in Arizona. *See BSI Holdings, LLC v. Ariz. Dep't of Transp.* ("*BSI I*"), 242 Ariz. 621, 624-25, ¶¶ 14-20 (App. 2017). The Arizona Supreme Court

---

[2] The aircraft's pilot logs subsequently indicated the BSI aircraft was in Arizona for all or a portion of at least 232 days each year from 2005 through 2012. ADOT calculated these totals by considering any time the aircraft spent on the ground during a calendar day to constitute a "day," a definition later rejected by our supreme court. *See BSI Holdings, LLC v. Ariz. Dep't of Transp.* ("*BSI II*"), 244 Ariz. 17, 18, ¶ 1 (2018).

accepted review, vacated this court's opinion, and remanded the case to the tax court. *See BSI II*, 244 Ariz. at 18, ¶ 1.

**¶13** In *BSI II*, our supreme court rejected both interpretations of the word "day" posited by the parties. Instead, the court found the word "day" ambiguous and dependent on context. *Id.* at 20, ¶¶ 13-14. The court also stated ADOT's interpretation was not owed any deference because the term "day" is not a technical term that requires expertise to construe, and ADOT's position had not "been reduced to written policy, much less a considered and established rule." *Id.* at 21, ¶ 17. The court further stated, however, that "[d]etermining the meaning of the word 'day' [] cannot dispose of the issue in this case because the statute cannot be meaningfully applied without also knowing what 'based in' means." *Id.* at ¶ 19. The court then noted:

> In the tax court, ADOT said it "makes its determination of whether an aircraft is 'based in this state' by inspecting the totality of the circumstances, including: day count, the aircraft's use, and tie-down and hangar agreements." *But it never explained how it applies those factors.* Indeed, BSI disputes that ADOT has used any other criteria other than a day count. Because the matter was decided on summary judgment, the tax court made no factual findings on this issue.

*Id.* at ¶ 21 (emphasis added).

**¶14** The supreme court next discussed various definitions of the word "base," while noting that "[t]hose definitions imply more of a domiciliary analysis rather than physical presence alone." *Id.* at ¶ 22.[3] Recognizing that "'base' may have a technical meaning in this statutory or factual context," the court concluded that it could not determine the word's meaning on the record before the court and therefore could not fully resolve the case without further proceedings. *BSI II*, 244 Ariz. at 21, ¶ 22.

**¶15** The supreme court directed the tax court on remand to determine what "based in" this state for a "day" means under § 28-8336 and then to apply such definitions to the facts presented. *Id.* at 22, ¶ 24. The supreme court stated that, in making its determinations, the tax court

---

[3]    *Cf. DeWitt v. McFarland*, 112 Ariz. 33, 33-34 (1975) (recognizing that "one is never without a domicile somewhere" and referring to a domicile as the place one "intend[s] to make . . . his home for the time at least" (citations omitted)).

should "count all days or fractions of a day when the aircraft was *based in the state, even if it was not physically present there*." *Id.* (emphasis added). The court further cautioned, however, that the tax court "*should not count days that the aircraft landed momentarily in Arizona when it was not based there*." *Id.* (emphasis added). The supreme court said that if resolution was impossible and the tax court determined the statute was still ambiguous after it performed the mandated analysis, the court should construe the statute in favor of BSI. *Id.* at ¶ 25 (citing *Harris Corp. v. Ariz. Dep't of Revenue*, 233 Ariz. 377, 384, ¶ 23 (App. 2013); *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶¶ 9-10 (2004)).

**¶16** On remand, ADOT proposed a domiciliary-type analysis as discussed by our supreme court in *BSI II*. BSI did not offer a contrary interpretation but continued to argue § 28-8336 was ambiguous and therefore did not give it or other taxpayers sufficient required notice. After renewed cross-motions for summary judgment, the tax court declined to adopt ADOT's new domiciliary analysis. In part, the tax court reasoned:

> The common dictionary definition of "base," suggests "more of a domiciliary analysis rather than physical presence alone." This does not leave the terms' meaning any less nebulous. It might imply a "totality of the circumstances" standard, as urged by ADOT. *The manner in which ADOT has historically applied such a standard, however, is neither clear nor consistent. It seems to have been a purely subjective decision made by very experienced auditors who apply standards which have not ever been reduced to writing or published.*

(Emphasis added.)

**¶17** The tax court held that § 28-8336 remained ambiguous and was too vague to give the taxpayer the type of "clear notice" that tax statutes are required to provide to promote compliance. Accordingly, as the supreme court had directed, the tax court construed the statutory language in favor of the taxpayer and ruled in favor of BSI.

**¶18** Following entry of a final judgment, ADOT filed a timely notice of appeal. We have jurisdiction under A.R.S. §§ 12-170(C) and -2101(A)(1).

## ANALYSIS

**¶19** ADOT argues the tax court erred in declining to apply a domiciliary analysis using the totality of the circumstances to define the

term "based in." ADOT argues that, had the tax court done so, it would have surely found the factors proposed by ADOT weighed in ADOT's favor.

### I. Standard of Review and Applicable Law

**¶20** We review *de novo* questions of statutory construction and the tax court's grant of summary judgment, including whether the court properly applied the law. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015); *Duke Energy Arlington Valley, LLC v. Ariz. Dep't of Revenue*, 219 Ariz. 76, 77, ¶ 4 (App. 2008). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

**¶21** Statutory analysis generally begins with the language of the statute. *See Sempre Ltd. P'ship v. Maricopa Cnty.*, 225 Ariz. 106, 108, ¶ 5 (App. 2010) (recognizing that the language used is "the most reliable indicator" of its meaning). "When the statute's language is clear and unambiguous, we must give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323, ¶ 11 (App. 2017) (citing *Indus. Comm'n v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 7 (App. 2009)). When the language is ambiguous, however, courts "look to the 'rules of statutory construction' and 'consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose.'" *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3 (App. 2007) (citations omitted).

### II. A.R.S. § 28-8336 and ADOT's Proposed Domiciliary Analysis

**¶22** Sections 28-8335 and -8336 control Arizona's annual aircraft licensing tax. Unless a statutory exception applies, an annual license tax is imposed on the owners of all private aircraft registered in this state. *See* A.R.S. § 28-8335(A); *see also* Ariz. Const. art. 9, § 15. The full annual tax rate is "one-half per cent" of the average fair market value of the aircraft. A.R.S. § 28-8335(B). Under A.R.S. § 28-8336, the owner of a nonresident's aircraft may receive the more favorable tax rate of "one-tenth of one per cent" of the aircraft's average fair market value. *See also* A.R.S. §§ 28-8322, -8335(B). At issue here is the interpretation of the nonresident license tax rate exception in § 28-8336.

**¶23** Section 28-8336 provides as follows:

The license tax for a nonresident whose aircraft is *based in* this state for more than ninety *days* but less than two hundred ten *days* in a calendar year is equal to one-tenth of one per cent of the average fair market value of the particular make, model and year of aircraft if the aircraft is not engaged in any intrastate commercial activity.

(Emphasis added.)

**¶24** As discussed, the aircraft licensing statutes do not define the terms "day" or "based in." We need not dive deeply into an analysis of the word "day" at this point, as our supreme court has already determined that term is contextual. *See BSI II*, 244 Ariz. at 21, ¶ 19 ("Determining the meaning of the word 'day' [] cannot dispose of the issue in this case because the statute cannot be meaningfully applied without also knowing what 'based in' means."). Our review focuses, therefore, on the "based in" language that was the core issue the supreme court directed the tax court to resolve on remand. Accordingly, we will examine whether ADOT's proposed domiciliary analysis might satisfactorily resolve the issue.

**¶25** In attempting to determine the meaning of the term "based in," our supreme court in *BSI II* and the tax court on remand considered the ordinary meaning of "based in" and various statutory construction tools—including dictionary definitions, legislative intent, the statutory scheme, the term's contextual use, and policy considerations—and found them unavailing. *See id.* at 21-22, ¶¶ 19-24. Based on the record before it, each court found the statute's language and underlying policy ambiguous. *See id.* Although the supreme court surmised that the term might have a technical meaning not immediately apparent in the statutory or factual context, *id.* at 21, ¶ 22, on remand neither party presented anything showing that "based in" has a technical meaning, for example, one commonly used by the FAA. *See generally U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211-12 (App. 1989); A.R.S. § 1-213 ("Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."). Accordingly, the tax court found no support for such a conclusion.

**¶26** Like the supreme court and the tax court examining this issue before us, our *de novo* application of the various means of statutory construction reveals no clear answer to the term's meaning. As the parties recognize, there is no legislative record that lends an understanding of the legislature's meaning of the term "based in," and nothing supports the notion that "based in" is a technical term meriting deference to ADOT.

¶27　　　　On remand and before this court, ADOT seizes upon the supreme court's observation that certain dictionary definitions of the word "base" "imply more of a domiciliary analysis rather than physical presence alone," *BSI II*, 244 Ariz. at 21, ¶ 22, to argue we should resolve the ambiguity in A.R.S. § 28-8336 by using a domiciliary analysis to interpret the term "based in." ADOT asserts a domiciliary analysis "is a reasonable interpretation of the statute" and maintains it established that BSI's aircraft was "based in" Arizona for at least some period during each year of the audit period under such an analysis.[4] ADOT further argues that although an aircraft might have multiple bases from which it operates during a year, we should use a domiciliary analysis to presume the aircraft's base never changed from Arizona during the audit period, a presumption ADOT maintains BSI bore the burden of disproving but did not meet.

¶28　　　　Even assuming without deciding that a domiciliary analysis might be consistent with the text of the statute and the statutory scheme and that it could be used to resolve the ambiguity in A.R.S. § 28-8336, such an analysis would first require a method for determining the domicile of an aircraft. ADOT does not have any written regulation[5] or formal or informal written policies interpreting "based in" (or "days") in the statute and has apparently never provided notice to BSI or other taxpayers as to how it defines those terms. Not only has ADOT never before publicly interpreted the statute to require a domiciliary approach, it likewise has never informed taxpayers that it would retroactively apply a "totality of the circumstances" test to its proposed domiciliary analysis.

¶29　　　　The record is not clear, moreover, that ADOT actually relied in BSI's case on the factors it now argues should be part of its totality of the circumstances standard for determining domicile, the weight it gave (if any) to such factors, and the extent to which the factors are supported by the record. Although ADOT could have sought to clarify these issues on

---

4　　　　No question exists that BSI was "based in" Arizona for at least some period during each of the audit years. The supreme court recognized this when it stated, "BSI conceded it was 'based in' Arizona for the 24-hour periods it was on the ground during the years in question, a concession it may not now relitigate." *BSI II*, 244 Ariz. at 21, ¶ 20.

5　　　　Although the Arizona Administrative Code ("A.A.C.") contains a variety of rules and regulations relevant to ADOT and "Transportation Aeronautics," including a list of definitions, *see* A.A.C. R17-2-101, none addresses the terms at issue here.

remand, it did not do so. Instead, as the tax court found, ADOT's view of whether an aircraft is "based in" Arizona appears to be "a purely subjective decision made by very experienced auditors who apply standards which have not ever been reduced to writing or published." That finding is supported by the record developed before the tax court.

¶30 Consequently, on this record, ADOT has not justified its proposed domiciliary analysis and totality of the circumstances test. Adopting such an analysis would require us to fashion some type of weighted-average test still not clearly defined or explained by ADOT, using factors not previously disclosed to BSI. Although ADOT invites this court to fashion such a test, it is not our province to act as a legislative body or to develop administrative rules or other guidance. As importantly, the factors ADOT claims "experienced auditors" would use to make the determination are not listed in published rule, regulation, or department policy, and there is nothing that gives a taxpayer notice of how the statute is going to be interpreted or applied. Having exhausted all other tools of statutory construction, we conclude § 28-8336 remains too ambiguous to apply to a taxpayer. *See BSI II*, 244 Ariz. at 22, ¶ 25.[6]

¶31 As our supreme court has recognized, ambiguities in "revenue statute[s] should be construed liberally in favor of the taxpayer and strictly against the state." *Ebasco Servs. Inc. v. Ariz. State Tax Comm'n*, 105 Ariz. 94, 97 (1969) (citations omitted); *accord Capitol Castings*, 207 Ariz. at 447, ¶ 10 (recognizing that when legislative intent cannot be determined, the statute is to be construed liberally in favor of the taxpayer).

¶32 "Tax statutes should provide clear notice of obligations so that taxpayers may comply and order their affairs accordingly." *BSI II*, 244 Ariz. at 22, ¶ 25; *accord City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 244, ¶ 37 (2019). On this record, and given the absence of any defining written rule, regulation, or departmental policy, § 28-8336 does not provide the "clear notice" to aircraft owners necessary for compliance and tax planning purposes. On a going-forward basis, however, the legislature can easily amend the statute to correct or clarify its ambiguous language. Alternatively, ADOT can propose, adopt, and publish rules or other

---

[6] Because we resolve the matter based on the statutory ambiguity, we need not and do not address other issues the parties' briefs raise. *See Kondaur Cap. Corp. v. Pinal Cnty.*, 235 Ariz. 189, 193, ¶ 8 (App. 2014).

guidance that provide clarity and the requisite notice to taxpayers such as BSI.[7]

### III. Costs and Attorneys' Fees on Appeal

**¶33** BSI requests costs and attorneys' fees on appeal pursuant to A.R.S. §§ 12-342 and 12-348. BSI is the successful party on appeal, and we grant taxable costs and an award of attorneys' fees to BSI upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶34** For the above reasons, we affirm the tax court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[7] Absent the clear notice that only legislative or agency clarification can provide, we seriously question whether and, if so, to what extent ADOT can enforce this statute and/or disprove taxpayers' claims of nonresident tax status. Further, with those factors clearly identified and published, ADOT will also be in a better position to demonstrate in any future assessment proceeding how it has applied those factors in evaluating residency/tax status under the statute.